1  NICOLE ROTH (CAL. BAR NO. 244919)
nroth@aldf.org
2  CARTER DILLARD (CAL. BAR NO. 20627)
cdillard@aldf.org
3  JOHN MELIA (CAL. BAR NO. 278323)
jmelia@aldf.org
4  ANIMAL LEGAL DEFENSE FUND
170 East Cotati Avenue
5  Cotati, CA 94931

6  Telephone:    +1-707-795-2533
Facsimile:    +1-707-795-7280
7
Attorneys for Plaintiffs
8

9           UNITED STATES DISTRICT COURT

10        FOR THE NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12

13  ANIMAL LEGAL DEFENSE FUND, a          Case No. 12-05809 WHA
    non-profit corporation; REGAL VEGAN,
14  INC.,                                 **MEMORANDUM OF POINTS AND**
                                          **AUTHORITIES IN OPPOSITION TO**
15              Plaintiffs,               **DEFENDANTS' MOTION TO**
                                          **DISMISS FOR FAILURE TO STATE**
16       v.                               **A CLAIM UNDER 12(b)(6)**

17  HVFG, L.L.C. (d/b/a "Hudson Valley Foie
    Gras"), Marcus Henley, Michael Ginor, Izzy
18  Yanay, and Richard Bishop,

19              Defendants.

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ..................................................................................................................... 1

STATEMENT OF THE ISSUES ............................................................................................. 2

STATEMENT OF FACTS ....................................................................................................... 2

Defendants ................................................................................................................................ 2
Regal Vegan ............................................................................................................................. 3
Animal Legal Defense Fund .................................................................................................... 4
Consumers ................................................................................................................................ 5

LEGAL STANDARD ............................................................................................................... 6

ARGUMENT ............................................................................................................................ 7

I.      Plaintiffs Have Pled Sufficient Facts For Lanham Act Standing. ........................... 7

        A.      Plaintiff Regal Vegan Is A Competitor To Defendant HVFG, And Has Suffered
                Commercial Injury Based On Defendants' Misrepresentations. ...................... 7

        B.      Plaintiff ALDF Has Been Injured As A Competitor Of Defendants, And The Court
                Should Recognize ALDF's Standing Under The Lanham Act. ...................... 10

        C.      A Finding Of Standing For Either Plaintiff Is Sufficient To Deny Defendants' Motion
                To Dismiss For Both Plaintiffs. ...................................................................... 11

II.     Defendants' Claims That Their Product Is Humane Are False And
        Misleading Statements Of Fact. As Such They Are Actionable Under The
        Lanham Act. .............................................................................................................. 11

        A.      The Court Must Look At Defendants' "Humane" Claims In Context With Their Other
                Advertising To Determine Whether They Are Factual. In Context Defendants Use
                "Humane" As A Factual Statement. ................................................................ 12

        B.      Defendants' Claim That HVFG's Foie Gras Products Is "Humane" Is Literally False. 13

        C.      At The Very Least, Defendants' "Humane" Advertising Is Misleading. ........ 15

        D.      As Objective Statements On Which Consumers Reasonably Rely, Defendants' Claims
                Are Not Puffery ............................................................................................... 16

                1.      Defendants' "Humane" Advertising Is Not Puffery Because Customers
                        Reasonably Rely Upon These Claims ................................................. 17

                2.      The National Advertising Division Of The Better Business Bureau Has Determined
                        That Humane Is An Objective Statement Upon Which Consumers Rely. ......... 19

III.    The Individual Defendants Are Liable Under The Lanham Act For
        Knowingly Participating In The False Advertising ................................................. 21

IV.    If The Court Grants Defendants' Motion To Dismiss, Plaintiffs Should Be
       Given The Opportunity To Amend Their Complaint.............................................. 21

V.     Defendants Motion To Dismiss Under Rule 12(b)(6) Violates The Local
       Rules. ................................................................................................................... 22

CONCLUSION .......................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Alkayali v. Geni, Inc.,*
    2007 U.S. Dist. LEXIS 61950 (C.D. Cal. 2007) .......................................................... 9, 10

*Am. Home Prods. Corp. v. Johnson & Johnson,*
    577 F.2d 160 (2d Cir. 1978) ........................................................................................ 14, 16

*Balistreri v. Pacifica Police Dept.,*
    901 F.2d 696 (9th Cir. 1988) ................................................................................................ 6

*Barrus v. Sylvania,*
    55 F.3d 468 (9th Cir. 1995) .................................................................................................. 7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................................. 6

*Brosnan v. Tradeline Solutions, Inc.,*
    681 F. Supp. 2d 1094 (N.D. Cal. 2010) ............................................................................... 9

*Cahill v. Liberty Mut. Ins. Co.,*
    80 F.3d 336 (9th Cir. 1996) ............................................................................................. 6, 7

*Carey v. Population Services Int'l,*
    431 U.S. 678 (1977) ........................................................................................................... 11

*Castrol Inc. v. Pennzoil Co.,*
    987 F.2d 939 (3d Cir. 1993) ............................................................................................... 14

*Century 21 Real Estate Corp. v. RE/MAX S. County (In re Century 21-RE/MAX*
    *Real Estate Advertising Claims Litig.),*
    882 F. Supp. 915 (C.D. Cal. 1994) ............................................................................... 13, 21

*Chacanaca v. Quaker Oats Co.,*
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) ............................................................................. 17

*Collegenet, Inc. v. Xap Corp.,*
    442 F. Supp. 2d 1070 (D. Or. 2006) .................................................................................. 14

*Collegesource, Inc. v. Academyone, Inc.,*
    2011 U.S. Dist. LEXIS 43684 (E.D. Pa. Apr. 22, 2011) ................................................... 15

*Conley v. Gibson,*
    355 U.S. 41 (1957) ............................................................................................................... 6

*DeSoto v. Yellow Freight Sys., Inc.,*
    957 F.2d 655 (9th Cir. 1992) .............................................................................................. 22

*Fed. Express Corp. v. United States Postal Serv.,*
    40 F. Supp. 2d 943 (W.D. Tenn. 1999) .............................................................................. 12

*Foman v. Davis,*
371 U.S. 178 (1962) ........................................................................................... 21

*Halicki v. United Artists Communications, Inc.,*
812 F.2d 1213 (9th Cir. 1987) ........................................................................... 11

*Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.,*
407 F.3d 1027 (9th Cir. 2005) ..................................................................... 7, 10

*Johnson & Johnson * Merck v. Smithkline Beecham,*
960 F.2d 294 (2d Cir. 1992) .............................................................................. 14

*Jurin v. Google Inc.,*
695 F. Supp. 2d 1117 (E.D. Cal. 2010) ............................................................. 21

*Kournikova v. General Media Communications, Inc.,*
278 F. Supp. 2d 1111 (C.D. Cal. 2003) .............................................................. 8

*Kuklachev et al. v. Gelfman et al.,*
600 F. Supp. 2d 437 (E.D. N.Y. 2009) .............................................................. 22

*Leonard v. Clark,*
12 F.3d 885 (9th Cir. 1993) ............................................................................... 11

*Merisant Co. v. McNeil Nutritionals, LLC,*
515 F. Supp. 2d 509 (E.D. Pa. 2007) ................................................................ 15

*Nat'l Prods. v. Gamber-Johnson LLC,*
699 F. Supp. 2d 1232 (W.D. Wash. 2010) ................................................. 14, 15

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms.
Co.,*
290 F.3d 578 (3d Cir. 2002) .............................................................................. 15

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.,*
227 F.3d 489 (5th Cir. 2000) ................................................................. 12, 13, 17

*Sanderson Farms, Inc. v. Tyson Foods, Inc.,*
549 F. Supp. 2d 708 (D. Md. 2008). ................................................................. 19

*Southland Sod Farms v. Stover Seed Co.,*
108 F.3d 1134 (9th Cir. 1997) ........................................................................... 12

*Time Warner Cable, Inc. v. DirectTV, Inc.,*
497 F.3d 144 (2d Cir. 2007) ........................................................................ 15, 16

*Trafficschool.com, Inc. v. Edriver, Inc.,*
653 F.3d 820 (9th Cir. 2011) ....................................................................... 7, 10

*U-Haul Int'l, Inc. v. Jartan, Inc.,*
681 F.2d 1159 (9th Cir. 1982) ........................................................................... 16

*U-Haul Int'l, Inc. v. Jartran, Inc.,*
522 F. Supp. 1238 (D. Ariz. 1981) .................................................................... 16

*W. Sugar Coop. v. Archer-Daniels-Midland Co.,*
    2012 U.S. Dist. LEXIS 109927 (C.D. Cal. July 31, 2012) ............................................... 21

**Statutes**

15 U.S.C. § 1125(a) ............................................................................................................ 11

**Other Authorities**

W. Page. Keeton, et al.,
    Prosser and Keeton on the Law of Torts § 109 (5th ed. 1984) ......................................... 17

**Rules**

Fed. R. Civ. P. 8(a)(2) .......................................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 6, 22

Fed. R. Civ. P. 15(a) ........................................................................................................... 21

Local Rule 7-2(a) ................................................................................................................ 22

Local Rule 7-2(b)(4) ........................................................................................................... 22

Local Rule 7-4(a)(4) ............................................................................................................ 22

Local Rule 7-4(a)(5) ............................................................................................................ 22

**INTRODUCTION**

In their motion to dismiss, Defendants claim that Plaintiff Regal Vegan sells a "completely different" food product than Defendants, and claim that Regal Vegan "does not — and cannot — allege" that its product is "meant to replace" foie gras. Dkt. Nos. 39, 40 at 14. This is, in fact, exactly the market role that Regal Vegan's product fills, and Plaintiffs plainly allege that Defendants' false advertising "encourages consumers to purchase force-fed foie gras instead of Regal Vegan's cruelty-free product." Dkt. No. 1 (hereinafter "Compl.") at ¶ 10. In this and other instances, Defendants' motion is premised upon willfully ignoring the allegations of the complaint. On a 12(b)(6) motion to dismiss, however, the allegations in the complaint must be taken as true and construed in the light most favorable to the nonmoving party. While Defendants may choose to ignore allegations in the Plaintiffs complaint, the Court should not, and Defendants' motion to dismiss should be denied.

This action arises from Defendants prominently advertising their foie gras product as humane when it is not. Foie gras is produced by intentionally force-feeding ducks or geese to induce a liver disease that distends the animals' livers eight or more times their normal size. The State of California and more than a dozen countries have banned the practice of force-feeding birds to produce foie gras because it is cruel. In Israel, formerly one of the world's largest producers of foie gras, the Supreme Court determined that foie gras production violated the nation's animal cruelty law. Dkt. No. 1 (hereinafter "Complaint") at ¶ 1. Well-respected avian experts agree that force-fed foie gras production can never be humane. Id.

The Plaintiffs in this case are the Animal Legal Defense Fund (ALDF) and Regal Vegan. ALDF is a national non-profit dedicated to the use of the legal system to assist courts and legislatures in preventing animal cruelty and advancing the interests of animals. Id. at ¶ 11. Regal Vegan is a New York business that sells a vegan paté called Faux Gras. Id. at ¶ 10. Plaintiffs have brought suit under federal and state law based on the false and misleading nature of Defendants' use of the word "humane" to describe their products, which has resulted in injury to Plaintiffs and has allowed Defendants to unfairly compete with Plaintiffs.

Defendants bring a motion to dismiss the present action under Federal Rule of Civil

OPPOSITION TO 12(B)(6) MOTION TO DISMISS
12-05809 WHA

Procedure 12(b)(6), contending that (i) Plaintiffs lack statutory standing under the Lanham Act because Plaintiffs and Defendant Hudson Valley Foie Gras ("HVFG") are not competitors and (ii) Defendants' statements regarding their purportedly "humane" foie gras practices are mere puffery and not actionable under the Lanham Act.

With respect to statutory standing, Plaintiffs have pled sufficient facts to show that Plaintiff Regal Vegan and Defendants compete in the same industry, food products, selling the same product, paté, and vie for the same consumer dollars from the same target audience, purchasers who care about the humane treatment of animals raised for food production. In addition, Plaintiffs have cited numerous studies showing that consumers of animal products care about how the animals are treated and, when they cannot be guaranteed that the animals are treated humanely, they will purchase meat substitutes, like Regal Vegan's Faux Gras, instead. Plaintiffs have also pled sufficient facts to show that Plaintiff ALDF competes with Defendants in the business of educating the public about the treatment of farm animals for food production.

Further, Defendants' "puffery" argument is without merit, particularly at the pleading stage. Plaintiffs have pled sufficient facts to show that Defendants' statements that HVFG is humane is not only literally false, but also misleading. Further, Plaintiffs' complaint shows that consumers rely on statements regarding the use of words such as "humane" in connection with food products. Plaintiffs have pled ample facts to support Lanham Act standing, and Defendants' Motion to Dismiss should therefore be denied.

STATEMENT OF THE ISSUES

1.   Whether two companies are competitors when they participate in the same industry, sell the same type of food product, and target the same customers.

2.   Whether Plaintiffs state an actionable claim under the Lanham Act when Defendants make literally false – or at the very least misleading – claims about their product, upon which consumers are likely to rely.

STATEMENT OF FACTS

**Defendants**

Defendant HVFG LLC (d/b/a Hudson Valley Foie Gras) is a grower of Moulard ducks

- 2 -

and producer of duck products located in Ferndale, NY. Compl. at ¶ 12. Individual Defendants are owners, officers, and managers of HVFG who are responsible for developing or implementing the company's "the Humane Choice" advertising campaign. *See id*. at ¶¶ 26-34. HVFG was formed in 1989 and has advertised itself as "humane" since 2008. *Id*. at ¶ 12. HVFG ducks are grown, force-fed, processed, and packaged on site, and are shipped directly to consumers via HVFG's website. *Id*. HVFG is the largest producer of foie gras in the United States. *Id*. It sells to all states in the country. *Id*.

Force-fed ducks suffer from numerous infections and ailments related to force-feeding and resulting liver diseases. Compl. at ¶ 58. Some of these problems result from injuries sustained during the feeding process. *Id*. Most problems, however, are the result of the ducks' liver growth and resulting disease. *Id*. Avian experts have concluded that many of the conditions resulting from the force-feeding process, as well as related diseases, are painful for the ducks. *Id*. at ¶ 59. These experts conclude, as a result, that foie gras production is cruel and inhumane. *Id*. at ¶ 60.

**Regal Vegan**

Plaintiff Regal Vegan is a business headquartered in Brooklyn, New York, that produces and sells the food product Faux Gras and as such is competing with Defendants. Compl. at ¶ 10. Faux Gras is made from all natural, whole food, plant-based ingredients. *Id*. Faux Gras does not contain or use any animal products in its production. Regal Vegan's customers purchase Faux Gras as a humane alternative to force-fed foie gras. *Id*. Defendants' false and misleading claim that their product is humane encourages consumers to purchase force-fed foie gras instead of Regal Vegan's cruelty-free product. *Id*. Regal Vegan is directly disadvantaged as a result of Defendants' advertising that they are "the Humane Choice." *Id*. The market for Faux Gras is adversely affected by the availability of force-fed foie gras. *Id*. In addition, Regal Vegan must invest resources educating consumers about the cruelty involved in force-fed foie gras. *Id*.

Regal Vegan sells Faux Gras directly to consumers through its website, including sales to California. Regal Vegan would like to sell more of its product nationwide, including to California. Compl. at ¶ 4. Since one of the main reasons people buy Faux Gras is that it is humane, Regal Vegan is not able to compete as well in the marketplace due to Defendants' false

and misleading advertising and anti-competitive behavior. *Id.*

Defendants' false and misleading claim that its product is humane encourages consumers to purchase force-fed foie gras instead of Regal Vegan's cruelty-free product. Compl. at ¶ 10. Regal Vegan is directly disadvantaged as a result of Defendants' advertising that it is "the Humane Choice." *Id.* The market for Faux Gras is adversely affected by the availability of force-fed foie gras. *Id.* In addition, Regal Vegan must invest resources educating consumers about the cruelty involved in force-fed foie gras. *Id.*

**Animal Legal Defense Fund**

Plaintiff Animal Legal Defense Fund is a national non-profit organization involved in every aspect of animal law. Compl. at ¶ 11. ALDF has spent over three decades focusing on issues involving animals and the law; its focus is the use of the legal system to assist courts and legislatures in preventing animal cruelty and advancing the interests of animals. *Id.* ALDF has been involved in the protection of animals used and sold in commercial enterprises, with a focus on cruelty and intensive confinement of animals used for food. *Id.* ALDF has spent significant resources educating the public about the inhumane nature of foie gras production. *Id.*

Defendants' false advertising has harmed ALDF by drawing organizational resources away from other activities, and by frustrating ALDF's organizational mission. ALDF has taken a number of steps to respond to Defendants' claims that their products are humane. ALDF has expended substantial organizational resources to educate the public about the animal welfare and health consequences of factory farming, including foie gras production. Compl. at ¶ 5. ALDF's communications department has spent significant resources raising awareness about the poor living conditions for ducks being raised for foie gras. ALDF has drafted press releases and has initiated letter-writing campaigns to oppose force-feeding of ducks raised for foie gras. *Id.* The organization has also spent extensive time and resources gathering information about foie gras production through public records requests to federal and state authorities. ALDF has written letters to the California Attorney General and the Better Business Bureau asking for false advertising actions against foie gras producers who claim their products are humane. Each of these activities has injured ALDF by consuming organizational resources that could have been

spent on other projects and outreach campaigns. *Id.* Were Defendants to stop describing their product as humane, ALDF would be able to redirect its resources in the furtherance of other aspects of its mission. *See id.*

**Consumers**

Consumers of animal products care about how the animals are treated. For example, according to a 2010 consumer research study, 50 percent of respondents said that animal care is important when deciding which food, brands, and shops to select. *Id.* at ¶ 124. In addition, in response to a 2007 survey, 95 percent of consumers agreed with the statement, "it is important that farm animals are well cared for." *Id.* at ¶ 125.

Moreover, consumers are willing to pay more for food that they believe is humane. Sixty-nine percent of respondents to a 2010 consumer research study were willing to pay more for higher ethical standards. *Id.* at ¶ 124. Forty-four percent of Americans stated they would pay five percent more for humanely raised food, 20 percent would by up to 10 percent more. *Id.* at ¶ 127.

Consumers will also stop buying products that are inhumane. Forty-four percent of respondents to a 2010 survey stopped buying a brand because they learned the company was acting in a socially irresponsible or unethical way. *Id.* at ¶ 124. In response to a 2007 consumer research study, nine percent of meat-eater survey respondents reported that reducing the suffering of animals on farms contributed to them reducing meat consumption. *Id.* at ¶ 128. Thirty percent of consumers surveyed that had reduced their meat consumption cited concern for animal welfare as one of their considerations for changing their diet. *Id.* at ¶ 130.

Consumers have little access to information about how animals raised for food are treated and thus must rely on representations from producers. For example, a consumer research study commissioned by the American Meat Institute found that 51 percent of American consumers reported having low knowledge of farmed animal care issues and practices. *Id.* at ¶ 135. Consumers making food purchasing decisions rely on external labeling of products, particularly on representations from the producer about humane treatment and animal welfare. *Id.* at ¶ 133.

As consumers are moving away from purchasing animal products because of concerns of animal welfare, they are also purchasing more meat alternatives. Citing to a U.S. product database

and a market research firm, NPR reported that "110 new meat substitute products were introduced in 2010 and 2011" and "frozen meat substitute sales reached $267 million in 2011." *Id*. at ¶ 137. A more recent article cites the sales in the United States for meat substitutes at $340 million, and growing at three to five percent per year. *Id*. at ¶ 138. In addition, almost half (46 percent) of meat-eaters that have reduced their red meat intake have adopted meat substitutes into their diets. *Id*. at ¶ 140.

In addition, Defendants' customers rely upon Defendants' statements that its product is humane. For example, in response to a post on defendant HVFG's Facebook page claiming foie gras is "cruel," one customer posted, "Hudson Valley is committed to humane production, [t]hat i[s] why they use duck instead of geese. The unique physiology of ducks makes hand feeding a stress free, non-invasive procedure. You can read more about it here. You need to do research and not assume. http://www.hudsonvalleyfoiegras.com/why.html." Compl. at ¶ 120. Another customer posted, "Thank you for all your support for Humane and Ethical Foie Gras!" *Id*. at ¶ 121. On Defendants' Yelp page, one customer posted, "The chef was great. He explained everything to me about the preparation of their Foie Gras. He assured me that everything is done humanely." *Id*. at ¶ 122.

**LEGAL STANDARD**

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007), *quoting Conley v. Gibson,* 355 U.S. 41, 47 (1957). A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory. " *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1988).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co*., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in

order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.,* 550 U.S. at 555. A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" *Id.* at 556.

## ARGUMENT

### I.     Plaintiffs Have Pled Sufficient Facts For Lanham Act Standing.

In challenging Plaintiffs' statutory standing under the Lanham Act, Defendants rely exclusively on their contention that Plaintiffs and Defendants are not direct competitors in the food industry. But "direct" or "actual" competition is not the standard in the Ninth Circuit. Rather, a plaintiff must only show "(1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.,* 407 F.3d 1027, 1037 (9th Cir. 2005), *citing Barrus v. Sylvania,* 55 F.3d 468, 470 (9th Cir. 1995). Plaintiffs have met their minimal burden on this standard and have adequately pled that they have suffered a commercial injury that has impaired Plaintiffs' ability to compete with Defendants in the food product industry. *See Bell Atl. Corp.*, 550 U.S. at 570; *Cahill*, 80 F.3d at 337-38.

### A.   Plaintiff Regal Vegan Is A Competitor To Defendant HVFG, And Has Suffered Commercial Injury Based On Defendants' Misrepresentations.

Plaintiff Regal Vegan and Defendants compete for consumers of humane "foie gras" spreads. Companies are competitors when they "vie for the same dollars from the same consumer group . . . ." *Trafficschool.com Inc. v. Edriver Inc.,* 653 F.3d 820, 827 (9th Cir. 2011). "[W]hen plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing." *Id.* Plaintiff Regal Vegan and Defendants both compete in the same industry, food products, selling the same product, paté, and vie for the same consumer dollars from the same target audience, purchasers who care about the humane treatment of animals raised for food production. Plaintiffs have adequately pled that Plaintiff Regal Vegan and Defendants are competitors sufficient to confer prudential standing.

*See Bell Atl. Corp.*, 550 U.S. at 570.

If they are vying for the same customers, firms can be competitors even if they are in entirely different industries. For instance, the Central District of California held that, for Lanham Act false advertising purposes, a celebrity athlete was a competitor with a magazine, despite the fact that one was in athletics and one was in the publishing industry. *Kournikova v. General Media Communications, Inc.,* 278 F. Supp. 2d 1111, 1118 (C.D. Cal. 2003). Plaintiff, Ms. Kournikova, sued Defendant, the publisher of Penthouse magazine, for distributing nude pictures falsely claimed to be her. The Court stated that the distinction between their businesses, athletics and publishing, was "both artificial and simplistic." *Id.* The determining factor was they "compete from for the same dollars from the same target audience – namely men." *Id.*

In the current case before this Court, Plaintiffs have alleged an even more specific target market than in *Kournikova*. Plaintiff Regal Vegan and Defendants compete in the same industry, food products, selling the same product, paté, and vie for the same consumer dollars from the same target audience, purchasers who care about the humane treatment of animals raised for food production. Regal Vegan's main product is called "Faux Gras," inviting a comparison between Regal Vegan's product and foie gras. Compl. at ¶ 4. Furthermore, Regal Vegan's customers purchase Faux Gras as a humane alternative to force-fed foie gras. *Id.* at ¶ 10.

Apart from Plaintiffs' allegations that Regal Vegan vies for the same dollars as Defendants, the complaint cites numerous studies showing consumer demand for humane products, and for vegetarian alternatives to traditionally animal-based foods. Compl. at ¶¶ 123-34, 137-41. For example, according to a 2010 consumer research study by the Humane Research Council, 50 percent of respondents said that animal care is important when deciding which food, brands, and shops to select; 69 percent of respondents were willing to pay more for higher ethical standards; 44 percent of respondents stopped buying a brand because they learned the company was acting in a socially irresponsible or unethical way; and 42 percent of consumers are more loyal to ethically-produced food brands than other brands. *Id.* at ¶ 124. In addition, almost half (46 percent) of meat-eaters that have reduced their red meat intake have adopted meat substitutes into their diet. *Id.* at ¶ 140. Even Meat & Poultry magazine acknowledged meat substitutes as a

competitor to meat: "Innovative meat analog products keep entering the marketplace and are something to take note of." *Id.* at ¶ 141. The parties' mutual focus on the dollars of this narrow yet powerful consumer group is, like in *Kournikova*, enough to show competition under the Lanham Act.

Furthermore, Regal Vegan has alleged that its injuries are the result of Defendant's false advertising. The complaint explains that "consumers of force-fed foie gras are unfamiliar with the cruelty involved in production, and many more are misled by the Defendants' false and misleading advertising." Compl. at ¶ 10. Defendants' claim that their foie gras product is humane encourages consumers to purchase force-fed foie gras instead of Regal Vegan's cruelty-free product. *Id.* Moreover, Regal Vegan must invest resources educating consumers about the cruelty involved in force-fed foie gras so that they will buy her product instead. *Id.* Construed in a light favorable to the Plaintiffs, allegations of the complaint show not only that Regal Vegan and Defendants are competitors, but that Regal Vegan's injury is a result of Defendants' misrepresentation. In this way, Regal Vegan has sufficiently pled Lanham Act standing.[1]

Plaintiffs find further support in *Alkayali v. Geni, Inc.*, in which the plaintiffs pled a credible Lanham claim very similar to the current case. In *Alkayali*, the plaintiff moved to dismiss defendant's Lanham Act counterclaim because the parties were not competitors. 2007 U.S. Dist. LEXIS 61950 at *5 (C.D. Cal. 2007). Just as in the current case, the moving party claimed that the parties were not competitors because defendants' pomegranate extract product contained "a very different formulation from Plaintiff's . . . product." *Id.* The court held that the non-moving party met its burden under 12(b)(6) by alleging that the products were similar, even though they were not identical. *Id.* It was sufficient that the non-moving party claim that as a result of the other party's conduct, they "have suffered monetary damage in that they have lost customers,

---

[1] Defendants cite *Brosnan v. Tradeline Solutions, Inc.*, 681 F. Supp. 2d 1094, 1101 (N.D. Cal. 2010) to support their contention that Plaintiff Regal Vegan and Defendants are not competitors. Docket Nos. 39, 40 at 13. In that case, the court held that even though the parties competed in the same broad market, credit repair services, parties were not competitors. *Brosnan*, 681 F. Supp. 2d at 1100-01. Defendant attempt to analogize the facts of *Brosnan* to the present case, explaining that the present parties' mutual participation in the "food products" market is insufficient to support a Lanham claim. Dkt. Nos. 39, 40 at 13. Plaintiffs, however, have alleged a much more specific market in which the parties compete: spreadable patés for consumers interested in animal welfare. The *Brosnan* analogy is therefore inapplicable.

income, profits, reputation and goodwill, will suffer damages for additional marketing and have otherwise suffered monetary losses in an amount to be proven at trial." *Id.*

Defendants' claim Plaintiff Regal Vegan and Defendant HVFG are not competitors because the compositions of their two products are very different. Dkt. Nos. 39, 40 at 11-13. Despite these differences, Plaintiffs in the current case, like the non-moving party in *Alkayali*, have credibly pled that they suffered damages as a result of Defendants' "humane" advertising. Compl. at ¶¶ 4, 10. This Court should follow the ruling in *Alkayali* and hold that Plaintiffs' allegations of loss are sufficient to meet their burden under Rule 12(b)(6).

### B. Plaintiff ALDF Has Been Injured As A Competitor Of Defendants, And The Court Should Recognize ALDF's Standing Under The Lanham Act.

Plaintiff ALDF and Defendants are competitors in the business of educating the public about foie gras production practices. In order to have a claim under the Lanham Act, a plaintiff must suffer a commercial or competitive injury. *See Jack Russell Terrier Network of N. Cal.*, 407 F.3d at 1037. Two companies are competitors when they "vie for the same dollars from the same consumer group . . . ." *Trafficschool.com Inc.*, 653 F.3d at 827. Both ALDF and HVFG are targeting the same consumers – meat-eaters who care about how farmed animals are treated. ALDF does not disseminate information about foie gras practices in order to convince vegetarians or vegans not to eat foie gras, since they would not eat foie gras in any event. Moreover, ALDF does not target people who do not care about how farmed animals are treated, as they would not be susceptible to animal welfare claims. Instead, ALDF is targeting the same audience that Defendants target – consumers of animal products who care about the humane treatment of animals. The more false information Defendants put in the marketplace concerning foie gras production, the more organizational resources ALDF needs to spend to disseminate correct information about foie gras production. In this way, Plaintiffs and Defendants compete in distributing information about foie gras.

Plaintiffs acknowledge the novel character of Lanham Act competition in this public education business. However, Plaintiffs believe that the same Lanham Act analysis applies to ALDF's Lanham Act standing. The text of the Lanham Act broadly grants standing to "any

OPPOSITION TO 12(B)(6) MOTION TO DISMISS
12-05809 WHA

person" who has suffered the kind of injury described by the Act. 15 U.S.C. § 1125(a). One of the primary reasons courts confined Lanham "to injury to a competitor" was to keep it from becoming "federal statute creating the tort of misrepresentation." *Halicki v. United Artists Communications, Inc.*, 812 F.2d 1213, 1214 (9th Cir. 1987). In order to prevent this, courts have required Lanham injury "not only be unfair but must in some discernible way be competitive." *Id*. Plaintiffs are not asking the Court create a new federal tort, which would offend the purposes of the Lanham Act, but rather to extend existing competitive injury, albeit slightly, to encompass businesses who compete in providing information to the public. Allowing a non-profit advocacy organization standing under the Lanham Act would protect these organizations from the harms of false advertising while avoiding "the complete dilution of the concept of unfair competition" that Lanham standing jurisprudence is designed to prevent. *See Halicki*, 812 F.2d at 1214. While Plaintiff ALDF does not sell goods, it is a corporation that spends significant resources in connection with particular and identifiable markets. Defendants' representations in one of these markets, that for force-fed foie gras, injures ALDF's interests, and granting Lanham protection to ALDF would not be inconsistent with the purposes of the Act.

## C. A Finding Of Standing For Either Plaintiff Is Sufficient To Deny Defendants' Motion To Dismiss For Both Plaintiffs.

If the Court finds that either Plaintiff has statutory standing, it need not, as a matter of judicial efficiency, conduct a full standing analysis for the second. "The general rule applicable to federal court suits with multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others." *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993), *citing Carey v. Population Services Int'l*, 431 U.S. 678, 682 (1977).

## II.  Defendants' Claims That Their Product Is Humane Are False And Misleading Statements Of Fact. As Such They Are Actionable Under The Lanham Act.

Defendants also claim that dismissal is warranted because the statements regarding "humane" treatment of the ducks and geese do not rise to the level of actionable false advertising under the Lanham Act. Specifically, Defendants contend that the use of "humane" is nothing more than "puffery." However, as the facts in Plaintiffs' Complaint make clear, such statements

are objectively verifiable and consumers rely on the use of words like "humane" in making their

purchasing decisions. Plaintiffs have more than met their low burden at the pleading stage on its

false advertising claim, and therefore the Court should deny Defendants' motion to dismiss.

**A. The Court Must Look At Defendants' "Humane" Claims In Context With Their Other Advertising To Determine Whether They Are Factual. In Context Defendants Use "Humane" As A Factual Statement.**

In the context of Defendants' other advertising, including representations on Hudson

Valley Foie Gras' webpage and other statements made to the public, Defendants' "humane"

claims are factual and actionable under Lanham. When evaluating whether a statement is

actionable under the Lanham Act, "the statement must be viewed in the light of the overall

context in which it appears." *Pizza Hut, Inc. v. Papa John's Int., Inc.*, 227 F.3d 489, 495 (5th Cir.

2000); *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

"Context will often help to determine whether the statement at issue is so overblown and

exaggerated that no reasonable consumer would likely rely upon it." *Pizza Hut, Inc.*, 227 F.3d at

495. "Where the context of an advertising statement may lend greater specificity to an otherwise

vague representation, the court should not succumb to the temptation to hastily rule a phrase to be

unactionable under the Lanham Act." *Id.* quoting *Fed. Express Corp. v. United States Postal

Serv.*, 40 F. Supp. 2d 943, 956 (W.D. Tenn. 1999). Thus, this Court must also look to the context

of Defendants' false statements.

In *Pizza Hut, Inc.* the Court held that Defendant Papa John's claim that its product was

"better" ("Better Ingredients. Better Pizza."), standing alone, was "a general statement of opinion

regarding the superiority of its product over all others. This statement, 'Better Pizza.,' epitomizes

the exaggerated advertising, blustering, and boasting by a manufacturer upon which no consumer

would rely." *Pizza Hut, Inc.*, 227 F.3d at 498. The Court went on to explain that when this

epitome of puffery was used in context, it became a statement of fact, actionable under the

Lanham Act:

> We agree that the message communicated by the slogan "Better Ingredients.
> Better Pizza." is expanded and given additional meaning when it is used as the tag
> line in the misleading sauce and dough ads. The slogan, when used in

combination with the comparison ads, gives consumers two fact-specific reasons why Papa John's ingredients are "better." Consequently, a reasonable consumer would understand the slogan, *when considered in the context of the comparison ads*, as conveying the following message: Papa John's uses "better ingredients," which produces a "better pizza" because Papa John's uses "fresh-pack" tomatoes, fresh dough, and filtered water. In short, Papa John's has given definition to the word "better." Thus, when the slogan is used in this context, it is no longer mere opinion, but rather takes on the characteristics of a statement of fact.

*Id.* (emphasis in original). The same is true in the current case before this Court. Even if consumers do not rely upon the statement that a product is humane in isolation (which Plaintiffs contend they do), looking at the entire context of Defendants' advertising campaign, the statement is given additional meaning which amounts to a statement of fact.

Defendants accompany their "humane" advertising with myriad other claims discussing the supposedly wonderful conditions in which their ducks are raised. Compl. at ¶¶ 22-25, 33-34. These additional claims give Defendants' statement that its product is "humane" considerably more weight than the use of the word "humane" in isolation. Even if a customer did not rely solely upon Defendants' marketing slogan that it is "the Humane Choice," it is likely that a customer who encounters this additional information on Defendants' website, Facebook page, Twitter account, or statements to the media will believe and adopt Defendants' statements because they purport to refer to independent authority and research. Thus, when the Court is considering whether Defendants' advertising is "puffery" or something more, it must look to the surrounding context. Like the defendant in *Pizza Hut*, Defendants in the present case surround their uses of the word "humane" with factual statements intended to bolster their credibility in the consumers' eyes. *See id.* at ¶¶ 22-25, 33-34. All of these facts put together, like the contextually factual statements in *Pizza Hut*, show that Defendants' "humane" claim amounts to a statement of fact, not a mere opinion.

## B. Defendants' Claim That HVFG's Foie Gras Products Is "Humane" Is Literally False.

To prove a claim under the Lanham Act, a plaintiff must "show either 1) that the challenged advertisement is 'literally false' or 2) while the advertisement is literally true, it is 'likely to mislead or confuse consumers.'" *Century 21 Real Estate Corp. v. RE/MAX S. County*, 882 F. Supp. 915, 922 (C.D. Cal. 1994), *citing Johnson & Johnson * Merck v. Smithkline*

*Beecham,* 960 F.2d 294, 297 (2d Cir. 1992). "[T]he test for literal falsity is simple[]; if a defendant's claim is untrue, it must be deemed literally false." *Collegenet, Inc. v. Xap Corp.*, 442 F. Supp. 2d 1070, 1077 (D. Or. 2006), *citing Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 944 (3d Cir. 1993). Proof of customer reliance or confusion is not required in a Lanham Act case if the false advertisement is proven literally false. *See, e.g., Am. Home Prods. Corp. v. Johnson and Johnson,* 577 F.2d 160, 165 (2d Cir. 1978) ("If a statement is actually false, relief can be granted on the court's own findings without reference to the reaction of the buyer or consumer of the product. . . ."). "Whether or not an advertisement is 'literally false' is a question of fact," and dismissal is inappropriate where "evidence exists to permit a juror to conclude that an advertisement is literally false." *Nat'l Prods. v. Gamber-Johnson LLC*, 699 F. Supp. 2d 1232, 1237 (W.D. Wash. 2010). The allegations of Plaintiffs' complaint, taken as true (as they must be at the pleading stage), are enough to show that Defendants' misrepresentations are literally false.

The Western District of Washington addressed the issue of literal falsity in *National Products*, 699 F. Supp. 2d 1232. Both parties in this case produced mounting apparatuses for laptops computers in vehicles. *Id.* at 1236. Plaintiff's Lanham Act suit targeted several comparisons that defendant's advertising made between the competing products, including claims that plaintiff's materials were "not good enough" and "only half as strong" as defendant's. *Id.* at 1239.  Defendant moved for summary judgment claiming, among other things, that the claims were not "literally false." *Id.* at 1239. Plaintiffs countered with expert testimony that the statements were "literally false and that the materials used are sufficient for their intended use." *Id.*  The court ultimately found that "whether these statements regarding the use of plastic and inferior bolts are literally false when viewed in context . . . is best left to the jury." *Id.*

Taken as true, as is necessary at the motion to dismiss stage, the allegations of Plaintiffs' complaint are easily enough to show that Defendants' "humane" advertising as false. By calling themselves "the Humane Choice," Defendants, like the defendants in *National Products*, are favorably comparing a specific quality of their foie gras to other choices in the marketplace. *See* Compl. at ¶ 3; *Nat'l Prods.* 699 F. Supp. 2d at 1239.  Plaintiffs allege that this representation is false, citing a litany of negative health effects of force-feeding on ducks, the conclusions of

"avian experts," and the existence of foie gras bans in numerous countries. *See* Compl. at

¶¶ 58-113, 142-45. The conclusion of these allegations is that force-fed foie gras can "never be

humane," much less the humane choice in a market with a wide variety of options. *See id.* at ¶ 1.

These allegations, offer the same sort of expert support for literal falsity that sustained the

plaintiff's claims in *National Products. See Nat'l Prods.* 699 F. Supp. 2d at 1239.  While this case

is at the motion to dismiss phase, and *National Products* concerned summary judgment, Plaintiffs

before this Court should at least have the opportunity to present evidence on the falsity of

Defendants' "humane" statements. In the meantime, taken as true, the complaint's allegations

show that Defendants' "humane" advertising is literally false.

### C.  At The Very Least, Defendants' "Humane" Advertising Is Misleading.

In the alternative, Plaintiffs have sufficiently alleged that Defendants' advertisements, if

not literally false, are ambiguous and likely to mislead or confuse consumers. Even if a statement

is not literally false, "relief is available under Lanham Act § 43(a) if it can be shown that the

advertisement has misled, confused, or deceived the consuming public." *Southland Sod*, 108 F.3d

at 1140. Plaintiffs alleging that an advertisement is misleading are claiming the statement "has

left an impression on the listener [or viewer] that conflicts with reality." *Time Warner Cable, Inc.

v. DIRECTV, Inc.,* 497 F.3d 144, 153 (2d Cir. N.Y. 2007).  "Reactions of the public are typically

tested through the use of consumer surveys." *Southland Sod Farms*, 108 F.3d at 1140. The

threshold for proving confusion is very low, and surveys showing that 15% to 20% of consumers

are misled are generally sufficient to sustain a Lanham Act claim.[2] *See e.g. CollegeSource, Inc. v.

AcademyOne, Inc.,* 2011 U.S. Dist. LEXIS 43684 at *19 (E.D. Pa. Apr. 22, 2011) citing *Novartis

Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 594

(3d Cir. 2002); *Merisant Co. v. McNeil Nutritionals, LLC*, 515 F. Supp. 2d 509, 526 (E.D. Pa.

2007). Courts also rely on consumer surveys to ascertain the meaning of ambiguous statements.

---

[2] Defendants cite two websites, not cited in the pleadings, in order to show that there are people
who claim that the production of meat can never be humane. Dkt. Nos. 39 and 40 at 19-20. As the
Court cannot look to facts outside of the pleadings that have not been judicially noticed on a
12(b)(6) motion, the Court must ignore these facts. Even if there is disagreement about what
constitutes humane treatment, however, Plaintiffs only need ultimately to show that Defendants'
statements misled at least 15% of surveyed consumers.

OPPOSITION TO 12(B)(6) MOTION TO DISMISS
12-05809 WHA

*See e.g. Time Warner Cable, Inc.*, 497 F.3d at 155, *citing Am. Home Prod., Inc. v. Johnson & Johnson*, 577 F.2d 160, 163-64 (2d Circ. 1978)

In *American Home Products*, the Second Circuit noted that district court judge concluded "[p]rincipally on the basis of consumer reaction surveys," that advertisements, comparing the effectiveness of Anacin and Tylenol, made certain representations, including "that Anacin is a superior analgesic in general to Tylenol and a superior analgesic for conditions which have an inflammatory component." 577 F.2d at 163-64. The Second Circuit upheld the injunction issued by the lower court after concluding that "the district court's use of consumer response data was proper." *Id*. at 166, 171. *See also id*. at 172. . ("A court should turn to consumers' reactions to determine whether the advertising in question makes false representations.")

Here, as in *American Home Products*, Defendants' claim that their product is "humane" is at minimum ambiguous. Defendants' product is created using a process that is banned as cruel in the State of California and in more than a dozen countries. Compl. at ¶ 1. Defendants describe as humane a product created by a process which avian experts say can "never be humane." *Id*. This incongruity is patently misleading, and Plaintiffs should be granted the opportunity to present survey evidence that Defendants' "humane" advertising in fact misleads at least 15% of consumers. Plaintiffs have alleged facts sufficient to show that Defendants' claims are material, as significantly more than 15% of consumers rely on claims of humane treatment when making purchasing decisions and these consumers make different purchases when they believe animals are treated inhumanely. *Id*. at ¶¶ 126-29, 133. Taken as true, these facts state a claim upon which relief can be granted.

### D. As Objective Statements On Which Consumers Reasonably Rely, Defendants' Claims Are Not Puffery.

Defendants' erroneously argue that their "humane" advertising amounts to puffery, and is therefore not actionable. Dkt. Nos. 39, 40 at 19. "[A]n advertisement characterized as puffing is one that is not deceptive for no one would rely on its exaggerated claims." *U-Haul Int'l, Inc. v. Jartran, Inc.*, 522 F. Supp. 1238, 1245 (D. Ariz. 1981), *aff'd*, 681 F.2d 1159 (9th Cir. 1982). "The common theme that seems to run through cases considering puffery in a variety of contexts is that

consumer reliance will be induced by specific rather than general assertions." *Newcal Indus., Inc.*

*v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008). "A statement is considered puffery

if the claim is extremely unlikely to induce consumer reliance." *Id.* Puffery is "a seller's privilege

to lie his head off, so long as he says nothing specific, on the theory that no reasonable man

would believe him, or that no reasonable man would be influenced by such talk." *Pizza Hut, Inc.*,

227 F.3d at 496.

While Defendants claim that their use of the word humane is puffery, it is in fact an

objective, factual statement about their product on which customers rely.

### 1.  Defendants' "Humane" Advertising Is Not Puffery Because Customers Reasonably Rely Upon These Claims.

The Northern District of California has held that a statement is not puffery where it

"arguably *could* mislead a reasonable consumer." *Chacanaca v. Quaker Oats Co.*, 752 F. Supp.

2d 1111, 26 (N.D. Cal. 2010). In *Chacanaca*, Plaintiffs sued defendant Quaker Oats Co. for false

advertising on Lanham and state law claims, alleging, among other things, that defendant's use of

the word "wholesome" was misleading given the presence of allegedly dangerous, artificial fats

in defendant's products. *Id.* at 1114-15. Defendant countered that the word "wholesome"

constituted puffery because it is "so vague and general that a reasonable consumer would not be

misled." *Id.* at 1125. The court disagreed, explaining that the "insistence that a product with

(allegedly) dangerous additives is nonetheless 'wholesome' . . . arguably could mislead a

reasonable consumer." *Id.* at 1126. For this reason, the court held "the term 'wholesome' cannot

be deemed to constitute non-actionable puffery." *Id.*

Like the defendants in *Chacanaca*, Defendants in the present case refer to their "The

Humane Choice" slogan as "vague" and "general." Dkt. Nos. 39, 40 at 22. At the same time,

Defendants utilize a force-feeding process that subjects ducks to painful and debilitating disease.

*See* Compl. at ¶ 64. Just as a reasonable consumer could assume that a wholesome product did

not contain dangerous ingredients, the same consumer could reasonably conclude that a humanely

raised animal was not intentionally subjected to a painful liver disease and related conditions.

Because of the reasonable, factual conclusions that consumers may draw from the word

"humane," the term cannot be mere puffery.

However vague Defendants may claim "humane" to be, it cannot be puffery because consumers in fact *do* rely on animal welfare claims like humane when making their purchasing decisions. As Plaintiffs allege, a 2012 consumer research study by the Humane Research Council found that 74 percent of respondents said that the welfare and protection of animals raised for food was "very important" or "somewhat important." Compl. at ¶ 123. In another survey, 50 percent of respondents said that animal care is important when deciding which food, brands, and shops to select; 69 percent of respondents were willing to pay more for higher ethical standards; 44 percent of respondents stopped buying a brand because they learned the company was acting in a socially irresponsible or unethical way; and 42 percent of consumers are more loyal to ethically-produced food brands than other brands. *Id.* at ¶ 124. On Defendant HVFG's own Yelp page, a customer posted "The chef was great. He explained everything to me about the preparation of their Foie Gras. He assured me that everything is done humanely." *Id.* at ¶ 122.

These allegations are much more than "conclusory allegations unsupported by facts" and a mere "formulaic recitation of the elements" that Defendants' claim. Dkt. Nos. 39, 40 at 8 quoting *Bell Atl. Corp.,* 550 U.S. at 555. Plaintiffs have alleged specific facts that tend to show that consumers, including consumers who have purchased Defendants' products, rely on and care about claims that products are humane. Thus, because of consumer reliance, the claim that a product is humane cannot be mere puffery. *See Newcal Indus., Inc.*, 513 F.3d at 1053.

Defendants attempt to support their "puffery" position by claiming that a slogan such as "The Humane Choice" is akin to phrases such as "The Caring Choice" or "The Nice Farmers." Dkt. Nos. 39, 40 at 22. But the words "humane," and "caring" or "nice" have vastly different meanings and generate distinct consumer responses when they are applied to a business's practices. For example, a "nice" or "caring" company could donate money to charity, have good customer service, or have management that says please and thank you to the employees. The word "humane," however, has an undeniable connection to a consumer's perception of animal welfare, especially when coupled with Defendants' other advertising statements. As is explained above, Defendants are attempting to convince consumers that their products are humane as a

matter of fact, and the use of this term in this way is actionable under the Lanham Act.

Because consumers reasonably rely on Defendants' statements that their products are humane, these advertisements are far more than puffery under the Lanham Act.

**2. The National Advertising Division Of The Better Business Bureau Has Determined That Humane Is An Objective Statement Upon Which Consumers Rely.**

In addition, the National Advertising Division of the Better Business Bureau has heard three separate cases on humane advertising and has determined that the statement that a product is humane is objective and customers rely upon it in making their purchasing decisions.[3]

On facts strikingly similar to those at issue here, the NAD determined that consumers rely on claims that products are developed through "humane" means. In Foster Poultry Farms, the East Bay Animal Advocates, Inc. claimed that a producer of animal products for human consumption was falsely advertising that its products were humane when they were not. Specifically, the group challenged Foster Farms Inc.'s advertising that it was "absolutely committed to the *humane* treatment of all animals" and "[o]ver the years, we have developed a comprehensive series of Animal Care Best Management Practices requiring *humane* production and processing practices for both chickens and turkey." *See* Ex. A, Foster Poultry Farms, Inc. (Chicken and Poultry Products), Case #4495, NAD Case Reports (05/12/06. Foster Farms Inc. claimed that whether a treatment is humane is a question of morality which is not within NAD's jurisdiction. NAD disagreed. Although "NAD's jurisdiction is limited to its review of truth and accuracy of national advertising and not issues of morality . . . the challenge centers on the interpretation and accuracy of *objective* statements made in advertising." *Id.* Since the statement that a product is humane is an objective statement, not subjective as Defendants claim, NAD exercised its jurisdiction over the case. NAD went on to explain how consumers rely on humane claims: "Specific claims of 'humane' treatment and representations made in advertising regarding the health of animals and the development of husbandry practices represent are statements that

---

[3] Although NAD decisions are considered advisory opinions and not binding, courts look to such decisions as persuasive authority in resolving false advertising disputes. *See. e.g., Sanderson Farms, Inc. v. Tyson Foods, Inc.*, 549 F. Supp. 2d 708, 718 n.7 (D. Md. 2008).

are relied on by certain consumers in making purchasing decisions regarding animal products." *Id.* Defendants ask this Court to reach the exact opposite conclusion than that reached by NAD, a panel of experts in advertising who deal exclusively with national advertising issues.

In another similar case, the Animal Welfare Institute challenged Perdue Farms Inc.'s advertising that its products were "Humanely Raised." *See* Ex. B, Perdue Farms Inc. (Perdue Poultry Food Products), Case #5295, NAD Case Reports (03/02/11). As the NAD does not have jurisdiction over cases of morality, or, in other words, subjective issues, and NAD did not dismiss the case for lack of jurisdiction, we can only assume NAD agreed with its previous determination that claims a product is humane is an objective statement. *See* Ex. A. In addition, NAD reiterated that is it important for the counsel to look at how consumers perceived the advertising: "consumer perception and understanding of 'humane' treatment or 'raised humanely' is directly relevant to the issue of whether such claims are substantiated or misleading to consumers." Ex. B. As consumers relied on these statements, it was appropriate for the counsel to hear the issue in order to protect consumers. *Id.*

In yet another NAD case, NAD examined implied claims by a foie gras producer that its product was humane. *See* Ex. C, D'Artagnan, Inc. (Foie Gras), Case #4959, NAD Case Reports (01/16/09). Specifically, NAD reviewed claims by D'Artagnan, Inc. that (1) "The liver is not diseased, simply enlarged" and (2) "Animals are hand-raised with tender care under the strictest of animal care standards." *Id.* NAD determined that these claims also resulted in an implied claim that D'Artagnan's Artisan Duck Foie Gras was produced humanely. The challenger presented consumer survey evidence that showed a significant number of consumers took away the message that the ducks were treated humanely. NAD discussed the importance of its position in reviewing claims of animal welfare: "NAD appreciates that advertising messages concerning animal welfare convey information that may enable customers to make purchasing decisions that reflect their particular social and ethical concerns. Consumers cannot typically verify the accuracy of these claims for themselves. NAD, therefore, plays and important role in reviewing such claims to ensure they are truthful, non-misleading and adequately substantiated." *Id*. at 6. NAD concluded that D'Artagnan's reference to the "strictest standards of care" suggested a third-party standard

OPPOSITION TO 12(B)(6) MOTION TO DISMISS
12-05809 WHA

that is rigidly adhered to. Finally, NAD acknowledged that even though issues concerning animal

were contentious, "to the extent that an advertiser chooses to make specific representations and

claims in their advertisements concerning the level of care, the health and welfare of animals

raised on farms, the burden is on the advertiser to ensure that those claims are truthful, accurate

and supported by competent and reliable scientific evidence." *Id.* at 10.

**III.    The Individual Defendants Are Liable Under The Lanham Act For Knowingly Participating In The False Advertising.**

Defendants claim that neither Plaintiff has standing to sue the individual defendants under

the Lanham Act. Dkt. Nos. 39, 40 at 14. Defendants do not cite any authority for their proposition

and do not specifically challenge the sufficiency of the facts or causes of actions in the

Complaint. *Id.* Joint tortfeasor liability is available under the Lanham Act when the defendant has

knowingly participated in the creation, development, and propagation of the false advertising

campaign. *See e.g. Century 21 Real Estate Corp.,* 882 F. Supp. at 925; *W. Sugar Coop. v. Archer-

Daniels-Midland Co.,* 2012 U.S. Dist. LEXIS 109927 (C.D. Cal. July 31, 2012). Plaintiffs clearly

lay out the facts pertaining to the individual defendants and their knowing involvement in the

false advertising. Compl. at ¶¶ 13-16, 26-34, 36-38. Plaintiffs also clearly lay out the causes of

action against the individual Defendants including aiding and abetting liability (*Id.* at ¶¶ 169-82),

conspiracy (*Id.* at ¶¶ 173-75), and respondeat superior (*Id.* at ¶¶ 176-78).

**IV.    If The Court Grants Defendants' Motion To Dismiss, Plaintiffs Should Be Given The Opportunity To Amend Their Complaint.**

If this Court grants Defendants' motion to dismiss under 12(b)(6), the Court

should give the Plaintiffs the opportunity to amend their Complaint to correct any deficiencies. A

court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory

motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of . . . the

amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Jurin v. Google Inc.,* 695

F. Supp. 2d 1117, 1121 (E.D. Cal. 2010), *quoting Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct.

227, 9 L. Ed. 2d 222 (1962). "Generally, leave to amend is denied only when it is clear the

deficiencies of the complaint cannot be cured by amendment." *Jurin,* 695 F. Supp. 2d at 1121,

*quoting DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Although survey evidence is generally not required at the pleading stage, *see e.g. Kuklachev et al. v. Gelfman et al.,* 600 F. Supp. 2d 437, 470 (E.D. N.Y. 2009), Plaintiffs should at least have the opportunity to completely gather this evidence to remedy any alleged deficiencies in the complaint.

**V.      Defendants Motion To Dismiss Under Rule 12(b)(6) Violates The Local Rules.**

Defendants filed three versions of their motion to dismiss under Rule 12(b)(6), all of which violate the local rules. Defendants filed a shell motion to dismiss on Thursday, February 28, 2013, which contained no statement of the relevant facts, no argument, and no authority. Dkt. No. 38. Local Rule 7-2 requires each motion to contain "the points and authorities in support of the motion" citing Local Rule 7-4. Local Rule 7-2(b)(4). Local Rule 7-4 requires each memorandum of points and authorities to include "[a] succinct statement of the relevant facts" and "[a]rgument by the party, citing pertinent authorities." Local Rule 7-4(a)(4)–(5). Defendants' February 28, 2013 filing violated both of these rules, provided no substance to which Plaintiffs could respond, and generally failed in properly noticing a motion.

On March 1, 2013 Defendants filed two additional motions to dismiss under Rule 12(b)(6), apparently the same, which appear to be an attempt to correct the deficiencies in the previous day's filing. Dkt. Nos. 39, 40. These motions attempt to set the hearing date for the April 4, 2013 which is the same day the Court will hear Defendants' motion to dismiss under Rule 12(b)(1). The local rules require a party to notice a hearing "not less than 35 days after service of the motion." Local Rule 7-2(a). Defendants' motions to dismiss filed on March 1, 2013 only provides notice 34 days before the hearing and are thus invalid. Moreover, the Court made it clear during the February 14, 2013 hearing that it did not want to hold two separate hearings on motions to dismiss for lack of standing. Dkt. No. 37. All three of Defendants' attempts to file a motion to dismiss under Rule 12(b)(6) are invalid for violating the local rules and this Court's February 14, 2013 demand.

Plaintiffs have responded to Defendants' motion to dismiss under Rule 12(b)(6) filed on March 1, 2013 as there was no argument to respond to in the February 28, 2013 filing. Even though Defendants' filing does not meet the requirements of the Local Rules, Plaintiffs will agree

1   to argue this issue during the April 4, 2013 hearing to avoid duplicative hearings.

2                                    **CONCLUSION**

3           Plaintiffs have pled sufficient facts to allow this Court to infer that there is at least a

4   "plausible" basis that (1) Plaintiff and Defendants are competitors and (2) Defendants' claim that

5   its product is humane is an objective statement of fact relied upon by consumers and is actionable

6   under the Lanham Act. As such, the Court should deny Defendants' 12(b)(6) motion to dismiss.

7

8   Dated: March 15, 2013                    NICOLE A. ROTH
                                             CARTER DILLARD
9                                            JOHN MELIA
                                             Animal Legal Defense Fund
10

11
                                             /s/ Nicole A. Roth
12                                           _____
                                                   NICOLE A. ROTH
                                                 Attorneys for Plaintiffs
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO 12(B)(6) MOTION TO DISMISS
                                             12-05809 WHA