Michael Tenenbaum, Esq. (No. 186850)
mt@post.harvard.edu
THE TENENBAUM LAW FIRM
1431 Ocean Ave., Ste. 400
Santa Monica, CA  90401
Tel    (310) 919-3194
Fax    (310) 919-3727

*Counsel for Defendants HVFG LLC, Marcus Henley,
Michael Ginor, Izzy Yanay, and Richard Bishop*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND, a California corporation; and REGAL VEGAN, INC., a New York corporation;<br><br>                    Plaintiffs,<br><br>– against –<br><br>HVFG LLC, a New York limited liability company;<br>MARCUS HENLEY, an individual;<br>MICHAEL GINOR, an individual;<br>IZZY YANAY, an individual; and<br>RICHARD BISHOP, an individual;<br><br>                    Defendants. | Case No. C 12-05809 WHA<br><br>**DEFENDANTS' <u>REPLY</u> BRIEF IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER FRCP 12(b)(6)**<br><br>Date:        April 4, 2013<br>Time:       11:00 a.m.<br>Place:       Courtroom 8<br><br>Hon. William H. Alsup |

## INTRODUCTION

Unable to point to any allegations that either of them sells foie gras or any other competing product made from foie gras that could give them standing to sue Hudson Valley under the Lanham Act, Plaintiffs spend half their opposition brief trying to define a market in which Regal Vegan's "food product" could be imagined to compete with Defendants' foie gras. In doing so, Plaintiffs ignore the most salient facts and holdings from this circuit's leading false advertising cases and reveal that their self-described "novel" lawsuit lacks any merit. No matter how they try to spin it, Plaintiffs cannot fairly allege that an animal rights group or the seller of a "plant-based" food product (or even of a "humane pâté," assuming they had ever alleged that) has statutory standing to maintain a false advertising action against a foie gras producer under the Lanham Act.

In the second half of their brief, Plaintiffs take the position that the term "humane" is somehow a statement capable of being verified as true or false. The Court should note that Plaintiffs do nothing to respond to, let alone distinguish, the many authorities in Defendants' moving papers that clearly establish that such a statement is not a "specific and measurable claim, capable of being proved false or reasonably interpreted as a statement of objective fact" — as opposed to the highly subjective general expression of opinion (or, at worst, puffery) that it is. Even if Plaintiffs could conjure up Lanham Act standing, their legal theory of liability must fail as a matter of law.

Plaintiffs' lawsuit is based on an untenable legal theory that an animal rights group and a producer of a "plant-based" product — both of whom contend that modern agricultural methods and the consumption of animals are inherently "inhumane" — are somehow "competitors" of a foie gras producer for false advertising purposes under the Lanham Act such that they should be allowed to challenge a farmer's use of the term "humane" in its slogan. Because it would be futile to invite Plaintiffs to try to cook up new allegations that would state a claim under the Lanham Act, Defendants' motion to dismiss should be granted without leave to amend.

# ARGUMENT[1]

I. **Plaintiffs fail to point to any allegations in the complaint that would give them statutory standing under the Lanham Act.**

Faced with the reality that they do not sell foie gras or any other competing product, Plaintiffs start their opposition with the claim that "'direct' or 'actual' competition is not the standard in the Ninth Circuit." (Opp. at p. 7, ln. 10.) Yet this flies in the face of the Ninth Circuit's holding in *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027 (9th Cir. 2005). While the court in that case noted that there is no requirement that the parties be competitors "in the traditional sense" *for false association claims*, it held that, because the Jack Russell Terrier Network of Northern California was not a direct competitor of the Jack Russell

---

[1] As explained in the Prefatory Note in Defendants' moving papers — and contrary to what Plaintiffs suggest (Opp. at 22, lns. 21-25) — Defendants set this motion to dismiss under FRCP 12(b)(6) for hearing on the same date and time as their motion to dismiss under FRCP 12(b)(1) specifically to honor the preference implied by the Court at the initial case management conference for having all such motions heard at the same time. Defendants timely filed the Notice of Motion and Motion, which included a Statement of Issues to Be Decided (ECF Dkt. No. 38), on Thursday, February 28th, i.e., 35 days before the previously scheduled hearing, but did not file the balance of the motion until the motion was re-filed in its entirety the next morning at 10:39 a.m. (ECF Dkt. No. 39). (The Court's docket clerk then asked that it be re-filed using a different "event" category. [ECF Dkt. No. 40].)

To cure this brief delay of a matter of hours, at the time the motion was re-filed, Defendants' counsel calendared the due date for Plaintiffs' opposition for the full 14 days later in order to provide them with their full time to respond as required by Local Rule 7-3(a). (ECF Dkt. No. 40). (So as not to affect the time for the Court to review the parties' submissions, Defendants calendared their own reply brief for just six days after Plaintiffs' opposition due date, i.e., 14 days before the hearing.) Plaintiffs thus had a full 35 days' notice of the motion and had a full 14 days to prepare their opposition as provided by the Local Rules. Other than to claim that this picayune procedural wrinkle somehow renders Defendants' entire motion "invalid" (Opp. at 22, lns. 20-21), Plaintiffs do not identify a whit of prejudice, and, having filed a full opposition, they expressly agree to appear at the hearing to argue the merits of the motion. Despite Plaintiffs having devoted a page of their brief to it (and having necessitated this response to set the record straight), this is a non-issue.

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER FRCP 12(b)(6)

Terrier Club of America, the plaintiff lacked standing to bring a *false advertising* claim. *Id.* at 1037. Plaintiffs' argument is also directly contradicted by recent district court decisions, such as *Jurin v. Google*, which explains that "[a] 'competitive injury' occurs when a *direct competitor* harms the plaintiff's ability to compete with it in their *shared marketplace*." 768 F.Supp.2d 1064, 1072 (E.D. Cal. 2011) (emphasis added).

### A. ALDF does not sell anything and does not compete with Defendants in any market.

Plaintiffs admit that ALDF does not sell anything at all, but they still claim that it has Lanham Act standing to sue a producer of foie gras. Such a claim exemplifies the frivolousness of Plaintiffs' positions in this case. Plaintiffs argue that ALDF and Defendants compete "in the business of educating the public about the treatment of farm animals for food production" (Opp. at p. 2, lns. 12-13) or "in the business of educating the public about foie gras production practices" (Opp. at p. 10, lns. 11-12). In the first place, this allegation does not appear anywhere in Plaintiffs' complaint. But even more problematic for them, Plaintiffs have not alleged that either ALDF or any of the Defendants actually *sells* any information about foie gras; by definition, they are not vying for *any* dollars, let alone the same dollars from the same consumer group.

In partial recognition of how silly their claim is, Plaintiffs state that they "acknowledge the novel character of Lanham Act competition in this public education business." (Opp. at p. 10, lns. 26-27.) Plaintiffs do not cite a single authority for their wishful notion that an animal rights group is a commercial competitor of a duck farm merely because they both provide free information about foie gras production. Indeed, since Plaintiffs do not (and cannot) allege that either they or Hudson Valley charge anything for the information they provide, "this public education business" does not even meet the *first* prong of the test for Lanham Act standing, i.e., *commercial* injury, let alone the requirement of a competitive one.[2]

---

[2] There is more than a little irony in Plaintiffs' noting that "[o]ne of the primary reasons courts confined Lanham [sic] 'to injury to a competitor' was to keep it from becoming [sic] 'federal statute creating the tort of misrepresentation.'" (Opp. at p. 11,

- 3 -

B.  **Regal Vegan does not sell foie gras and cannot establish Lanham Act standing based on its assertion that it competes with Hudson Valley in the market for "food products" — or even for "spreadable patés for consumers interested in animal welfare."**

1.  **Despite Plaintiffs' attempt to imagine a market in which they compete with Defendants, Regal Vegan cannot fairly allege that it competes with Hudson Valley or the individual Defendants.**

In an attempt to avoid dismissal, Plaintiffs came up with a host of confused and conflicting definitions of the hypothetical market in which they believe Regal Vegan's "food product" competes with Hudson Valley's foie gras. In some places, they argue that Hudson Valley's simple slogan has "impaired Plaintiffs' ability to compete with Defendants *in the food product industry*." (Opp. p. 7, lns. 16-17 [emphasis added].) In others, Plaintiffs claim that both Regal Vegan and Defendants are "selling the same product, paté." (Opp. at p. 7, lns 24-25.) In still other places, they contend that Regal Vegan competes with Defendants "for consumers of humane 'foie gras' spreads" — despite the fact that Regal Vegan does not even sell any foie gras, let alone allege that it markets *its* product as "humane." (Opp. at p. 7, lns. 20-21.) Then, pages later, Plaintiffs change their tune again and posit that the market in which they believe Regal Vegan competes with Hudson Valley should be defined as the market for "spreadable patés for consumers interested in animal welfare." (Opp. at p. 9, lns. 27-28.)

First of all, none of these arguments or definitions is even consistent with the allegations in Plaintiffs' complaint. In the complaint, Plaintiffs alleged that "[t]he *market for Faux Gras* is adversely affected by the availability of force-fed foie gras." (Compl. ¶ 10 [emphasis added].) The only other shared marketplace to which Plaintiffs even adverted in their complaint is the market for "food products." (Compl. ¶ 10, lns.

---

lns. 1-4, quoting *Halicki v. United Artists Commc'ns., Inc.*, 812 F.2d 1213, 1214 (9th Cir. 1987).) Yet that is essentially what Plaintiffs are asking this Court to do. If anyone who disagreed with a statement made by a business or its employees could simply provide "rival" information to the public at no charge and sue for false advertising, it would result in "the complete dilution of the concept of unfair competition" that the Lanham Act is designed to prevent. *See Halicki*, 812 F.2d at 1214.

- 4 -
DEFENDANTS' <u>REPLY</u> BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER FRCP 12(b)(6)

20-22.) Based on the myriad conflicting positions they take in their opposition, it should be obvious that — whether it be "food products," "patés," "humane 'foie gras' spreads," or "spreadable patés for consumers interested in animal welfare" — Plaintiffs cannot fairly allege that Regal Vegan's product competes with Hudson Valley's foie gras. As Defendants previously pointed out, this Court has held that, even though parties may compete in the same broad market, that does not make them competitors for purposes of standing under the Lanham Act. *Brosnan v. Tradeline Solutions, Inc.*, 681 F. Supp. 2d 1094 (N.D. Cal. 2010).

Plaintiffs also argue that Regal Vegan competes with Defendants because, in Plaintiffs' view, they "vie for the same consumer dollars from the same target audience, purchasers who care about the humane treatment of animals raised for food production." (Opp. at p. 7, lns. 25-27; p. 10, lns. 20-22.) This argument is absurd, especially considering that Plaintiffs themselves have not even alleged that Regal Vegan markets its product as "humane." And if "spreadable" products for "people who care about animals" were enough to define a shared marketplace in which Regal Vegan were given standing to sue a foie gras producer under the Lanham Act, then the same flawed logic would extend to allow, for example, the makers of Skippy peanut butter — another "spreadable" "plant-based" food product — to sue Hudson Valley as well.

> 2. **Plaintiffs' references to *Kournikova* and *Alkayani* are misplaced if not totally misleading because those cases involved competitors selling the *same products*.**

Plaintiffs cite only two cases in their attempt to liken Regal Vegan's claim to a legitimate Lanham Act lawsuit. Faced with the fact that Regal Vegan and Hudson Valley sell entirely different products, Plaintiffs first suggest that Regal Vegan can be a competitor of Hudson Valley "even if they are in entirely different industries." (Opp. at p. 8, lns. 2-3.) Plaintiffs would have this Court believe that the court in *Kournikova v. General Media Communications, Inc.*, 278 F.Supp.2d 1111 (C.D. Cal. 2003), found that "a celebrity athlete was a competitor with a magazine" simply because the parties'

- 5 -
DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER FRCP 12(b)(6)

target audience was "men." (Opp. at p. 8, lns. 3-10.) Yet, contrary to what Plaintiffs suggest, the court in *Kournikova* held that Anna Kournikova and GMC, the publisher of *Penthouse*, were competitors because GMC "markets a variety of videos and calendars" of women wearing little or no clothing and because Kournikova "*likewise markets videos and calendars*" of women in bathing suits such as herself and Pamela Anderson (and did so through the same channels). *Id.* at 1118-19. Nonetheless, the court went on to find that Kournikova's prospect of showing a "competitive injury" was "remote" and that — like Regal Vegan's claim here — her false advertising claim therefore had to be dismissed. *Id.* at 1119.

Plaintiffs also suggest that *Alkayali v. Geni, Inc.*, 2007 WL 2315436 (C.D. Cal. Apr. 11, 2007), somehow helps them establish standing. (Opp. at p. 9, ln. 15.) They argue that the *Alkayali* court found the parties to be competitors despite the fact that the plaintiff's product "contained a very different formulation" from the defendant's product and that this should lead the Court here to conclude that Regal Vegan's "plant-based" food product similarly competes with foie gras. (Opp. at p. 9, lns. 18-22.) But Plaintiffs curiously omit the most critically relevant fact in the *Alkayali* case, which is that that "*both Alkayali* and Defendants market[ed], promote[d], and [sold] pomegranate extract products." *Alkayali*, 2007 WL 2315436 at *2. *Alkayali* would only be "very similar to the current case" (Opp. at p. 9, ln. 16) if both Regal Vegan and Hudson Valley both sold foie gras, which, by Plaintiffs' own allegations, they obviously never will.

### C. Because neither Plaintiff even competes with Hudson Valley, neither Plaintiff has standing to sue the individual Defendants.

A ruling by this the Court that Plaintiffs do not compete with Hudson Valley — and thus lack standing to bring a false advertising claim under the Lanham Act — would necessarily warrant the dismissal of this action against the individual Defendants, who do not sell anything in their individual capacities but are simply affiliated with Hudson Valley.

### D. Plaintiffs are wrong that a finding of statutory standing as to either Plaintiff is sufficient to deny the motion to dismiss as to both.

Plaintiffs state, "If the Court finds that either Plaintiff has statutory standing, it need not, as a matter of judicial efficiency, conduct a full standing analysis for the second." (Opp. at p. 11, lns. 18-19.) This is just plain wrong and makes one wonder whether Plaintiffs even looked at the cases that they cited. In *Leonard v. Clark*, 12 F.3d 885, 888-89 (9th Cir. 1993), the Ninth Circuit clearly addressed only *Article III standing* (i.e., the subject of Defendants' concurrent motion to dismiss under FRCP 12(b)(1)), not statutory standing. In fact, neither *Leonard* nor the Supreme Court case it cites even mentions statutory standing (and neither involves Lanham Act claims, for that matter). In any event, for the reasons explained above, *neither* ALDF *nor* Regal Vegan meets the "competitive injury" requirement for standing under the Lanham Act in the first place.

### II. Plaintiffs do not even respond to Defendants' points and authorities about "The Humane Choice" or "humane" being subjective expressions of opinion, as opposed to a "specific and measurable claim, capable of being proved false or reasonably interpreted as a statement of objective fact."

Defendants devoted a considerable portion of their opening brief to discussing the various cases that illustrate why terms like "humane" and "the Humane Choice" are not statements of *fact* that can form the basis of a valid claim for false advertising under the Lanham Act. (Motion at p. 15-19.) One might have expected some effort from Plaintiffs to distinguish Defendants' multiple authorities or to try to counter the logic of Defendants' arguments. Yet Plaintiffs' opposition completely ignores the key holdings in the Ninth Circuit, which make clear that a slogan referring to a company as "humane" is not a "specific and measurable claim, capable of being proved false or reasonably interpreted as a statement of objective fact." Plaintiffs ignore this entire section because, well, they have to, or else they will lose this case.

The closest Plaintiffs come to addressing Defendants' arguments is their contention that Defendants' claims should be considered in context with "their other

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER FRCP 12(b)(6)

advertising" to determine whether they are factual statements.  (Opp. at 12-13.) Plaintiffs pick pieces from *Pizza Hut, Inc. v. Papa John's International, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000), in an attempt to concoct their own legal standard for what constitutes an actionable statement of fact.  For instance, Plaintiffs note that the Fifth Circuit in *Pizza Hut* suggested that statements "must be viewed in the light of the overall context in which [they] appear[]." (Opp. at p. 12, lns. 19-11.)  But Plaintiffs fail to mention that *Pizza Hut* emphasized that, for a statement of fact to be actionable, it must be "one that (1) admits of being adjudged true or false in a way that (2) admits of empirical verification." *Pizza Hut*, 227 F.3d at 496 (quoting *Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 685 (5th Cir. 1986)).  By omitting this crucial rule and failing to respond to Defendants' arguments regarding whether their statements are ones of fact or opinion, Plaintiffs presumably hope to avoid having to explain to this Court how a claim that something is "humane" can possibly be adjudged "true or false."

     Plaintiffs futher distort the facts of *Pizza Hut* in an attempt to analogize it to their own lawsuit.  *Pizza Hut* involved direct comparison advertising.  At issue in that case was the tag line "Better Ingredients. Better Pizza." *Id.* at 498.  Taken on its own, this slogan was a general statement of opinion "because the phrases 'better pizza' and 'better ingredients' are not subject to quantifiable measures." *Id.* at 498-99.  However, the Fifth Circuit found that, when the slogan was considered together with *a series of direct comparison advertisements* comparing specific ingredients used by Papa John's with the ingredients used by its competitors, the jury's finding that it was misleading and actionable was not unreasonable. *Id.* at 500.  Moreover, unlike in *Pizza Hut*, where the slogan at issue became "quantifiable" in context with the specific comparison ads, here Defendants' makes no direct comparison to Regal Vegan, let alone a "quantifiable" claim.

A. **Plaintiffs' "numerous studies" do nothing to establish that Hudson Valley's "Humane Choice" slogan is a statement of fact.**

Plaintiffs spend a significant portion of their brief talking about various consumer surveys that purport to show a concern among some consumers for the welfare of animals. Defendants do not dispute that consumer surveys may go to the *materiality* of a specific, verifiable claim. But that only shows that some percentage of consumers "cares about how the animals are treated." (Compl. ¶¶ 123-34.) Whether some consumers care about how animals are treated, however, does nothing to render the terms "humane" or "The Humane Choice" verifiable or quantifiable. Thus, this type of survey evidence cannot be used to convince the Court to determine as a matter of law that a statement is a matter of fact rather than a matter of opinion.

B. **Plaintiffs misunderstand Ninth Circuit authority on the test for demonstrating falsity within the meaning of the Lanham Act.**

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was *literally true* but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997), citing *Castrol Inc. v. Pennzoil Co.,* 987 F.2d 939, 943, 946 (3d Cir. 1993). Plaintiffs cannot establish that Hudson Valley's slogan "The Humane Choice" (or other references to itself as "humane") is "specific and measurable claim, capable of being proved false or reasonably interpreted as a statement of objective fact" — as opposed to the highly subjective general expression of opinion. So Plaintiffs suggest that cases like *Southland Sod Farms* allow them to get past the pleading stage by offering evidence that such a statement is "likely to mislead or confuse consumers." (Opp. at p. 15.) But that is a misstatement of the rule for claims that are not literally false. *Southland Sod* specifically stated that, in order for a statement to be evaluated for its potential to mislead or confuse consumers, it must be "*literally true* but likely to mislead or confuse." Here, that alternative test is irrelevant because, as explained at length in

Defendants' moving papers, the statement at issue here about Hudson Valley being "humane" or "The Humane Choice" is not even capable of proof as true or false.[3]

### III.   Plaintiffs' complaint should be dismissed without leave to amend.

As Plaintiffs recognize, dismissal is proper under FRCP 12(b)(6) where there is a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  (Opp. at p. 6, lns. 21-23.)  Plaintiffs also acknowledge that leave to amend may be denied "when it is clear the deficiencies of the complaint cannot be cured by amendment."  (Opp. at p. 21, lns. 27-28.)  Yet Plaintiffs offer nothing to counter Defendants' position that any amendment would be futile here.

Plaintiffs refer to unspecified "survey evidence" and say that they "should at least have the opportunity to completely gather this evidence" to remedy the deficiencies in their complaint.  (Opp. at p. 22, lns. 1-4.)  Plaintiffs' complaint is already 27 pages long and includes 178 paragraphs with plenty of their favorite "survey evidence."  No amount of additional "survey evidence" is going to turn them into sellers of foie gras (or of any other duck or liver product) to confer standing under the Lanham Act, and all the surveys in the world would not turn the word "humane" into an actionable statement of fact.

Finally, dismissal without leave to amend will not prejudice either ALDF or Regal Vegan in any way.  As Defendants noted in their opening brief, Plaintiffs can always file a new lawsuit if either of them ever starts selling foie gras.

Dated:  March 21, 2013                            /s/ Michael Tenenbaum
                                                  _____
                                                  Michael Tenenbaum, Esq.
                                                  THE TENENBAUM LAW FIRM
                                                  *Counsel for Defendants HVFG LLC, Marcus Henley, Michael Ginor, Izzy Yanay, and Richard Bishop*

---

[3]   Defendants respectfully refer the Court to their objections to Plaintiffs' Request for Judicial Notice of irrelevant hearsay reports from the Better Business Bureau.