1   NICOLE ROTH (CAL. BAR NO. 244919)
    nroth@aldf.org
2   CARTER DILLARD (CAL. BAR NO. 20627)
    cdillard@aldf.org
3   JOHN MELIA (CAL. BAR NO. 278323)
    jmelia@aldf.org
4   ANIMAL LEGAL DEFENSE FUND
    170 East Cotati Avenue
5   Cotati, CA 94931

6   Telephone:    +1-707-795-2533
    Facsimile:    +1-707-795-7280
7
    Attorneys for Plaintiffs
8

9                  UNITED STATES DISTRICT COURT

10           FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12

13   ANIMAL LEGAL DEFENSE FUND, a          Case No. 12-05809 WHA
     non-profit corporation; REGAL VEGAN,
14   INC.,                                 **PLAINTIFFS' NOTICE OF RULING
                                           IN RELATED CASE AND
15                  Plaintiffs,            OPPOSITION TO DEFENDANTS'
                                           NOTICE OF RULING IN RELATED
16         v.                              CASE**

17   HVFG, L.L.C. (d/b/a "Hudson Valley Foie  Date:   April 4, 2013
     Gras"), Marcus Henley, Michael Ginor, Izzy
18   Yanay, and Richard Bishop,            Time:   11:00 a.m.

19                  Defendants.            Place:  Courtroom 8

20

21         On March 29, 2013 Defendants filed a Notice of Ruling in Related Case regarding *Animal*

22   *Legal Defense Fund and Regal Vegan, Inc., et al. v. United States Department of Agriculture et*

23   *al.*, case no. 2:12-cv-4028-ODW(PJWx). *See* Docket No. 45. Plaintiffs file this Opposition to

24   correct Defendants' statement of the holding by pointing out that the court made no findings

25   regarding the fact that foie gras production intentionally induces disease in animals. Rather, the

26   court held that plaintiffs had not stated a cause of action under 5 U.S.C. § 702 because the court

27   construed their complaint as seeking enforcement of existing law rather than promulgation of new

28   rules, which is prohibited under *Heckler v. Chaney*, 470 U.S. 821 (1985). *See* Docket No. 45

1    Attachment at 5:24-6:07. As the court held plaintiffs did not state a cause of action, the court did

2    not make any findings of fact.

3        Plaintiffs also provide notice and attach the recent and more relevant ruling in *Hemy v.*

4    *Perdue Farms, Inc. et al.*, CA No. 3:11-cv-00888 (MAS) (LHG). *See* Attachment. In *Hemy,* the

5    United States District Court for New Jersey denied a motion to dismiss consumers' false

6    advertising complaint stating that they were mislead by Perdue Farms Inc.'s advertising that its

7    chicken products were "humanely raised."

8        Plaintiffs respectfully request that this court take notice of attached ruling and the

9    correction regarding Defendants' notice.

10

11   Dated: April 2, 2013                        NICOLE A. ROTH
                                                 CARTER DILLARD
12                                               JOHN MELIA
                                                 Animal Legal Defense Fund

13

14                                                       /s/ Nicole A. Roth
                                                 NICOLE A. ROTH
15                                               Attorneys for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF RULING IN RELATED CASE
                                                 12-05809 WHA

ATTACHMENT

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| NADINE HEMY and NANCY CONNER, Individually and on behalf of themselves and all other similarly situated, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civil Action No. 11-888 (MAS) (LHG) |
| PERDUE FARMS, INC., ABC CORPORATIONS 1 through 10 and JOHN DOES 1-10, | : : : : | **MEMORANDUM OPINION** |
| Defendants. | : : | |

---

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Perdue Farms, Inc.'s ("Perdue" or "Defendant"), Motion to Dismiss (Def.'s Mot. to Dismiss, ECF No. 45) Plaintiffs Nadine Hemy's ("Hemy") and Nancy Conner's ("Conner") (collectively, "Plaintiffs") Third Amended Complaint (TAC, ECF No. 42). Plaintiffs filed Opposition to the Motion. (Pls.' Opp'n, ECF No. 47.) Defendant filed a Reply Brief. (Def.'s Reply, ECF No. 51.)

Plaintiffs subsequently submitted a Motion for Leave to File a Supplemental Brief (Mot. for Leave, ECF No. 55) that was opposed by Perdue (Opp'n to Leave, ECF No. 56). Plaintiffs filed a Reply to Defendant's Opposition to the Motion for Leave to File a Supplemental Brief. (Reply to Opp'n to Leave, ECF No. 59.)

The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78. For good cause

shown, Defendant's Motion to Dismiss is DENIED. Additionally, Plaintiffs' Motion to File a Supplemental Brief is DENIED.

## I.  **Background**

This matter concerns a proposed class action alleging that Perdue "Harvestland" brand products mislead consumers about the "humane" treatment of chickens, purported endorsement by the United States Department of Agriculture ("USDA") and any distinction as between the treatment of chickens sold under Perdue's Harvestland brand and competitors' chickens. Plaintiffs allege that from September 2009 through the present, Perdue has labeled its Harvestland brand chicken products as "humanely raised" and "USDA Process Verified." These claims are alleged to be false and deceptive by Plaintiffs. In support of these allegations, Plaintiffs rely upon the National Chicken Council's ("NCC") Animal Welfare Guidelines and Audit Checklist for Broilers. According to Plaintiffs, NCC Guidelines "codify industry norms."

Plaintiff Hemy purchased Harvestland chicken products bearing the Humanely Raised and USDA Process Verified labels. Plaintiff Hemy alleges that she would not have purchased the "premium-priced" chicken if she knew the chicken was "not in fact treated humanely" or differently from other chicken on the market, throughout the chicken's life. (TAC ¶ 13.) Plaintiff Conner alleges substantially the same injury. (TAC ¶ 16.)

### NCC-designed Guidelines

Plaintiffs allege the NCC standard is the basis for Perdue's Humanely Raised claim and is nothing more than the industry standard which "necessitate[s] inhumane treatment" and allows "non-compliance" by way of "huge loopholes." (TAC ¶¶ 27, 49.) Plaintiffs allege that Harvestland brand chickens are: shackled by their legs, upside-down, while fully conscious; electrically shocked before being effectively rendered unconscious; cut ineffectively or partially while fully conscious; drowned/scalded while conscious; stored in trucks for hours under

excessive temperatures; subject to lighting conditions which result in eye disorders; injured in the process of being removed from their shells; subject to health problems and deformities due to selective breeding; and provided no veterinary care. (TAC ¶¶ 28-37.)

Plaintiffs allege Perdue's program is in all relevant respects identical to the NCC Guidelines by way of citation to: (1) a May 28, 2010 letter from Perdue's General Counsel reflecting that the NCC Guidelines are the basis for humane care . . ."; (2) a December 17, 2008 document entitled "Audit Section Weekly Activity" indicating that Perdue's processes associated with the Humanely Raised claim are based on the Animal Welfare Guidelines; (3) a March 12, 2010 e-mail message from a Perdue Regional Veterinary Services Manager stating that the "Humanely Raised" Process Verified Program ("PVP") audit criteria instrument is the same criteria as the NCC audit instrument; and (4) a document received pursuant to a December 2011 Freedom of Information Act ("FOIA") request allegedly supporting that, with the exception of the removal of point values, the NCC Audit Checklist is identical to the criteria for the Humanely Raised PVP standards. (TAC ¶¶ 39-44.)

Plaintiffs allege that the NCC Guidelines are followed by "virtually every other mass chicken producer in the nation." (TAC ¶ 53.) Plaintiffs further allege that the NCC Guidelines sanction cruel practices and that Defendant has violated these "already-low" standards. (TAC ¶¶ 56-58.)

Plaintiffs allegedly believed that the "Humanely Raised" label meant that chickens were treated humanely throughout life, including a "quick and painless death." (TAC ¶¶ 59-60.) Plaintiffs assert that a survey of 209 members of an online consumer panel demonstrate that their beliefs were reasonable. (Pls.' Opp'n 29-30.)

3

**USDA Process Verified**

Plaintiffs' Third Amended Complaint alleges that they interpreted the USDA Process Verified label claim, made in conjunction with the "Humanely Raised" claim to mean Harvestland chickens were approved and endorsed by the USDA as Humanely Raised. (TAC ¶¶ 99-100.)  Plaintiffs assert that the USDA Process Verified label is a marketing tool used in conjunction with the USDA Agricultural Marketing Service's ("AMS") Process Verified Program. (TAC ¶ 102.) According to Plaintiffs, the "processes" to be "verified" are defined by the company itself. (TAC ¶ 103.) Plaintiffs, therefore, allege that neither AMS nor any other service within the USDA deems Defendant's conduct to be humane and that the USDA Process Verified claims are therefore misleading. (TAC ¶¶ 104-108.)

**Perdue's Harvestland Chicken as Compared to that of Competitors**

Relying on the aforementioned survey, Plaintiffs contend that their interpretation of the label that Defendant's chicken was better than others on the market, or higher quality, was objectively reasonable. (TAC ¶¶ 107-109.) Plaintiffs allege that Perdue removed the Humanely Raised label from other Perdue products. (TAC ¶ 111.) Plaintiffs' Third Amended Complaint cites to internet message boards for the proposition that Defendant's Harvestland product is perceived as desirable despite it not being materially different from other poultry products. (TAC ¶¶ 112-116.)

**"Premium Price" for Harvestland Brand Chicken**

Plaintiffs assert they have been damaged in the amount of the difference between Harvestland chicken and the retail value of standard, mass produced chicken not marketed as Humanely Raised. (TAC ¶¶ 123-128.)

Plaintiffs' Third Amended Complaint asserts four counts: (1) violation of N.J. Stat. Ann. § 56:8-1, *et seq*., the New Jersey Consumer Fraud Act ("NJCFA"), (2) Fraud in the Inducement, (3) Negligent Misrepresentation, and (4) Breach of Express Warranty.

## II.     Procedural History

The procedural history of the instant matter is informative. This case was removed from the New Jersey Superior Court on February 17, 2011. (ECF No. 1.) On April 1, 2011, Defendant filed a Motion to Dismiss Plaintiffs' First Amended Complaint. (ECF No. 9-1.)

On November 30, 2011, Hon. Freda L. Wolfson, U.S.D.J., issued an Opinion and Order regarding Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint. (ECF Nos. 29, 30.) Certain of Plaintiffs' claims were dismissed with prejudice. However, the Court allowed Plaintiffs to rectify specific infirmities in the First Amended Complaint.  Plaintiffs were permitted to re-plead allegations relating to their "Humanely Raised" claim. Plaintiffs were similarly permitted to re-plead their "USDA Process Verified" claims as they related to Perdue's website and Facebook page. *Hemy v. Perdue Farms, Inc*., No. 11-888 (FLW), 2011 WL 6002463, at *15 (D.N.J. Nov. 30, 2011).

On February 13, 2012, Plaintiffs filed a Second Amended Complaint. (ECF No. 32.) On April 27, 2012, Plaintiffs moved for leave to file a Third Amended Complaint. (ECF No. 34.) The Court granted Plaintiffs Leave to File a Third Amended Complaint on July 27, 2012. (ECF No. 40.) Plaintiffs subsequently filed their Third Amended Complaint, and the instant Motion to Dismiss pursuant to Rule 12(b)(6) followed. (ECF Nos. 42, 45.) Thereafter, Plaintiffs filed a Motion to file a Supplemental Brief. (ECF No. 55.)

## III.     Plaintiffs' Motion for Leave to File a Supplemental Brief

As a preliminary matter, Plaintiffs' motion for leave to file a supplemental brief must be denied. Essentially, Plaintiffs' motion is the result of their receipt of "new information" via a

FOIA request. (ECF No. 55-1.) Plaintiffs argue that this new information speaks directly to the NCC standards and Perdue's best practices. (*Id*.) Plaintiffs' Motion relies upon audit reports and Defendant's "Humanely Raised" manual. (*Id*.) Plaintiffs' brief explicitly states: "[i]n sum, the FOIA information provides further reason for this Court to deny Perdue's Motion to Dismiss in its entirety." (*Id*. 4).

In opposition, Defendant argues that Plaintiffs' motion for leave to file a supplemental brief "attempts to add 'new information'" to the "allegations in the Third Amended Complaint." (ECF No. 56, 1.) The Court finds that this attempted injection of new information, or facts, runs afoul of Third Circuit precedent holding that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *See Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). As such, Plaintiffs' Motion for Leave to File a Supplemental Brief is denied.

## IV. <u>Analysis</u>

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds on which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v.*

6

*UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id*. For example, the court is free to ignore legal conclusions or factually unsupported accusations which merely state that "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Determining plausibility is a "context-specific task which requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Plausibility, however, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 545). In the end, facts which only suggest the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Further, an allegation of fraud must meet the pleading requirements of Rule 9(b), which provides, in relevant part: "a party must state with particularity the circumstances constituting fraud or mistake."

It is well-established that NJCFA claims must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See*, *e*.*g*., *Frederico v*. *Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *Arcand v. Brother Int'l Corp*., 673 F. Supp. 2d 282 (D.N.J. Nov. 30, 2009). To satisfy this heightened pleading standard, a plaintiff "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.' Specifically, the plaintiff must plead or allege the "date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200. Indeed, the Third Circuit has advised that, at a minimum, a plaintiff must support allegations of fraud with all the essential factual background that would accompany "'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties*, *Inc*. *Sec*. *Litig*., 438 F.3d 256, 276-77 (3d Cir. 2006) (citations omitted), *abrogated on other grounds by Tellabs, Inc*. *v*. *Makor Issues & Rights*, *L.T.D*., 551 U.S. 308, 322-23 (2007). A

complaint must do more than assert generalized facts, it must allege facts specific
to the plaintiff.

*Hemy*, 2011 WL 6002463, at *13.

### A.    Count I: New Jersey Consumer Fraud Act (NJCFA)

As set forth in Judge Wolfson's thorough Opinion, Plaintiffs must demonstrate three
elements in order to state a *prima facie* case under the NJCFA: (1) unlawful conduct by the
Defendant; (2) an ascertainable loss by Plaintiffs; and (3) a causal connection between the
Defendant's unlawful conduct and Plaintiffs' ascertainable loss.  *Hemy*, 2011 WL 6002463, at
*12 (internal citations omitted).

In sum, Plaintiffs allege in the Third Amended Complaint that Perdue's Harvestland
chickens were not humanely raised and that the standard by which the label is affixed is
materially the same as the industry standard. In other words, Plaintiffs argue that Perdue's
Harvestland chicken products are purportedly humanely raised chickens, which would create
additional value from the perspective of the consumer, yet the Humanely Raised label is the
result of guidelines substantially similar to the NCC Guidelines that are used essentially
industry-wide.  Plaintiffs further allege that the USDA Process Verified label attached to the
packaging of Harvestland chickens near the Humanely Raised label was reasonably interpreted
by Plaintiffs to mean that the USDA Process Verification process certified as true Defendant's
Humanely Raised label.

### 1.    Humanely Raised Label

Judge Wolfson dismissed without prejudice an earlier derivation of Plaintiffs' Humanely
Raised claim on multiple grounds.

### a.    Allegations with Regard to Harvestland Products Only

Judge Wolfson held that Plaintiffs failed to "limit their allegations of inhumane treatment and slaughtering to Harvestland products." Plaintiffs were granted leave to "provide more details about the audits and Perdue's practices, but limited to Harvestland products only." In compliance with Judge Wolfson's mandate, Plaintiffs' Third Amended Complaint is limited to Defendant's Harvestland products.

### b.    NCC Guidelines

Plaintiffs allege that Perdue's Humanely Raised claim as it relates to Harvestland chicken products is based on the NCC Guidelines, which are merely a codification of the industry standard and "necessitate" inhumane treatment of chickens. (TAC ¶¶ 27-38.)

In response, Perdue argues that Plaintiffs fail to allege any facts to support their assertion that the NCC Guidelines sanction or require inhumane treatment, or that inhumane raising or slaughtering practices took place at any Harvestland processing facilities. (Def.'s Mot. to Dismiss 8-10, 20.)  Defendant argues that the Third Amended Complaint "does not allege a single instance in which a 'Harvestland' chicken was treated in an inhumane fashion." (Def.'s Mot. to Dismiss 20.)

Plaintiffs derive their allegations regarding Perdue's best practices being essentially identical to the NCC Guidelines from a number of documents, including the following: (1) an audit checklist obtained from USDA AMS in response to a request made under FOIA, (2) an e-mail message from a Perdue employee, and (3) correspondence from Perdue's general counsel. Plaintiffs argue that these documents individually and collectively support that the NCC Guidelines are materially the same as the criteria used for Perdue's Humanely Raised claim.

As it relates to the audit checklist, Perdue argues that "merely using the same checklist does not mean the programs are administered in the same way."  (Def.'s Reply 7.) This,

however, misses the point. The issue before the Court is not whether as a matter of fact Perdue's PVP program acts in a manner identical to that of the NCC Guidelines. Rather, at the Motion to Dismiss stage the inquiry for the Court is whether Plaintiffs have sufficiently pled allegations supported by facts which render its claim for relief plausible.

Plaintiffs further allege that an e-mail message from David Hermes, a Regional Services Manager at a complex that processes Harvestland chicken products, supports that there is no "meaningful difference between the company's Humanely Raised PVP standards and the NCC standards." (TAC ¶ 43.)

Similarly, the letter from Perdue's General Counsel stating that the NCC guidelines represent the "basis" for the Humanely Raised program, construed in favor of Plaintiffs, factually supports Plaintiffs' allegations. (TAC ¶ 41.)  Accordingly, Plaintiffs have pled sufficient facts that the checklist utilized for Perdue's PVP program is analogous to that of the NCC to support their allegations.

> ### c.  Audit Reports Relying on the Treatment and Facilities of Perdue and/or Harvestland Chickens

With respect to the audit reports, Plaintiffs allege that they reveal that Perdue's chickens were subjected to inhumane conditions. In response, Defendant argues that of the five alleged audit reports, only one relates to Harvestland chickens and does not reflect any practice Plaintiffs claim is inhumane. Defendant also states that *all* of the reports relied upon by Plaintiffs were conducted prior to approval of the facilities into the PVP and prior to Defendant's use of the Humanely Raised label. (Def.'s Mot. to Dismiss 18.) Defendant deems it fatal to Plaintiffs' claim that the single audit of a facility that produces Harvestland chickens did not reveal any of the allegations raised in the Third Amended Complaint. (*Id*.)

10

Plaintiffs allege that the audit reports were timely in that the majority of the audits took place in April 2010, after Defendant began producing Harvestland chicken in September 2009. (Pls.' Opp'n 27.) Additionally, Plaintiffs allege that their claims of inhumane treatment are not dependent on the audit reports. Plaintiffs further allege that they have set forth facts demonstrating a reasonable basis for the belief that Perdue's chickens, irrespective of brand, are subjected to the same manner of treatment.

Preliminarily, the Court accepts Plaintiffs' factual allegations as true. As such, the audit reports, as alleged, occurred during the relevant period, *i.e*., after Perdue began the production of Harvestland chicken. However, the Court has before it at best a limited factual basis to conclude that Harvestland chickens were treated in the same manner as Perdue chickens more generally. Nevertheless, Plaintiffs cannot be expected to plead facts solely within the Defendant's knowledge. *Hughes v. Panasonic Consumer Elec., Co*., No. 10-846, 2011 WL 2976839, at *13 (D.N.J. July 21, 2011). Thus, Plaintiffs have pled a plausible claim for relief in that they have alleged that the manner of treatment is not distinguishable. The veracity of such claim, which is greatly disputed by Defendant, is not within the province of the Court at this procedural juncture.

### d.   Whether "Humanely Raised" Label is Applicable to Slaughter Allegations

Additionally, as it relates to the Humanely Raised label, Judge Wolfson found that Plaintiffs failed to sufficiently plead that they and similarly situated consumers believe that the Humanely Raised label includes the slaughtering process. In addition, Judge Wolfson declined to apply an expansive reading of humanely "raised" to include the slaughtering process. *Hemy*, 2011 WL 6002463, at *15. ("[T]he meaning Plaintiffs would have the Court attach to 'raised' is not the commonly understood definition of that term.") Judge Wolfson afforded Plaintiffs leave to allege "facts from which the Court could infer" that a reasonable consumer would believe that

the "humanely raised" label encompasses humane slaughtering processes. *Id*. at 17. Perdue renews its previous argument stating, "Plaintiffs have still failed to allege facts showing that consumers ascribe a broader meaning to the term raised than dictionaries and other authoritative sources." (Def.'s Mot. to Dismiss 22.)

In response, Plaintiffs argue that the reasonable consumer would expect that humanely raised chickens "would not be shackled upside-down, electronically shocked, or bled to death while fully conscious and in intense prolonged pain[.]" (Pls.' Opp'n 28.) Plaintiffs cite generally to an unprovided internet survey which sets forth the "gory details" of their allegations. *Hemy*, 2011 WL 6002463, at *17 (". . . Plaintiffs' "reasonable consumer" allegations, [] contain gory details about specific alleged slaughtering practices . . . . ). Plaintiffs correctly note "the definition of both 'raising' and 'slaughter' are contested terms." (Pls.' Opp'n 29.) The Court must construe the facts in the light most favorable to the Plaintiffs. In light of this controlling standard, the Court finds that it is plausible for the reasonable consumer to construe the Humanely Raised label as speaking to Perdue's processes up until the time of death, including slaughter. (TAC ¶¶ 73-92.)

In sum, Plaintiffs have properly limited their claims to reflect only Harvestland chicken products. Further, Plaintiffs' argument that the NCC Guidelines and Defendant's PVP standards are essentially identical is sufficiently pled. Plaintiffs' reliance on the audit reports for Perdue chickens, generally, as opposed to strictly Harvestland chickens is problematic but not fatal to Plaintiffs' Humanely Raised claim at this stage of the proceedings. In addition, the internet survey is sufficient to show a plausible claim for relief where the components of the survey quoted in the Third Amended Complaint factually support the contention that a reasonable consumer may believe that the slaughtering process is encompassed by Perdue's Humanely

Raised label. Accordingly, as it relates to Plaintiffs' Humanely Raised claim, Perdue's Motion to Dismiss is denied.

### 2.     USDA Process Verified Label

Plaintiffs claim that the USDA Process Verified label, in concert with the "Humanely Raised" label, "created the impression in their minds that an unbiased third party was certifying Perdue's claims." *Hemy*, 2011 WL 6002463, at *20 (internal citations omitted); (TAC ¶¶ 99, 100); (Pls.' Opp'n 13.)   Judge Wolfson dismissed this claim without prejudice, holding that "missing from Plaintiffs' Amended Complaint are allegations that the USDA-shield misrepresentations are related to Perdue's use of the 'Humanely Raised' . . . label[], and with respect to the website and Facebook allegations, in particular, Plaintiffs have failed to plead those allegations with particularity." *Hemy*, 2011 WL 6002463, at *20. Judge Wolfson clarified, "the only allegations that may potentially be re-pled are the 'Humanely Raised' allegations and the USDA shield website and Facebook allegations." *Id*.

Plaintiffs' Third Amended Complaint is silent with regard to any claims stemming from the USDA shield website or Facebook advertisements. Rather, Plaintiffs argue that the proximity of the labels render Plaintiffs' interpretation of the label objectively reasonable. (TAC ¶¶ 101, 109.) In support of this contention, Plaintiffs rely upon an internet survey indicating "58% of consumers believe that the USDA Process Verified shield meant that the company meets the standards for the treatment of chickens developed by the USDA itself." (*Id*.)

Perdue argues that Plaintiffs have disregarded Judge Wolfson's Opinion and Order.  In essence, Perdue states Plaintiffs abandoned their USDA shield website and/or Facebook page claims, and instead allege in the same manner that was dismissed before, that the USDA Process Verified label means that the USDA endorsed Perdue's procedures as it relates to its Humanely Raised label of Harvestland products.  (Def.'s Mot. to Dismiss 27-29.)

Judge Wolfson noted "several problems with Plaintiffs' USDA shield allegations." *Hemy*, 2011 WL 6002463, at *20. Among Judge Wolfson's concerns was that "many of Plaintiffs' allegations do not contain specific facts from which it could be inferred that Perdue's advertising statements suggested to a reasonable consumer that the USDA certified Perdue's use of the 'Humanely Raised' . . . label[]." *Id*. Notably, Judge Wolfson held that even though "Perdue was granted permission to use the shield [that] does *not* completely undermine Plaintiffs' allegation that the combination of the shield and the 'Humanely Raised' labels . . . created the impression in their minds that an unbiased third party was certifying Perdue's claim." *Hemy*, 2011 WL 6002463, at *20 (emphasis added). Judge Wolfson's Opinion determined that "what is missing from Plaintiffs' Amended Complaint are allegations that the USDA-shield misrepresentations are related to Perdue's use of the 'Humanely Raised' . . . labels . . . ." *Id*.

Plaintiffs' excerpts of an internet survey referenced in the Third Amended Complaint factually support Plaintiffs' contention that they believed that the USDA Process Verified label in conjunction with the Humanely Raised label meant that the Harvestland chickens were "approved and endorsed" by the USDA. (TAC ¶ 99-100.) The survey contends that "58% of consumers believe that the USDA Process Verified shield meant that the company meets standards for the treatment of chickens developed by the USDA itself." (TAC ¶ 101.)

Accordingly, Plaintiffs' NJCFA claims with regard to both the Humanely Raised label and USDA Process Verified label are sufficiently pled and Defendant's Motion to Dismiss with regard to same is denied.

Finally, and as explained below, with regard to Plaintiffs' additional claims of Fraud in the Inducement, Negligent Misrepresentation, and Breach of Express Warranty, by limiting their allegations to Harvestland products, and for the reasons stated above with regard to the NJCFA claim, Plaintiffs have rectified the concerns highlighted by Judge Wolfson.  Additionally,

14

Plaintiffs have sufficiently pled that Defendant's Humanely Raised statement is false or misleading thus alleviating Defendant's primary contention with regard to the remaining Counts of the Third Amended Complaint.

**B.    Count II: Fraud in the Inducement**

Perdue moves to dismiss Count II of Plaintiffs' Third Amended Complaint, which sets forth Plaintiffs' common law fraud claim. "Common law fraud involves a more onerous standard than a claim for fraud under the [NJ]CFA." *Mason v. Costco Wholesale Corp.*, No. 09-361 (JLL), 2009 U.S. Dist. LEXIS 76176, at *18 (D.N.J. Aug. 26, 2009) (internal citation omitted). "[T]he elements of common law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge of falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Va. Sur. Co. v. Macedo*, No. 08-5586 (GEB), 2011 U.S. Dist. LEXIS 49077, at *56 (D.N.J. May 6, 2011) (internal quotation omitted).

As aforementioned, Rule 9(b) requires that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Plaintiffs allege that such statement is knowingly false where Defendant was aware of its raising and slaughtering processes, and that same were not "humane." Plaintiffs further assert that Defendant sought for consumers to rely upon these statements so that they would be willing to pay the "premium" cost of Perdue's Harvestland brand chicken. Plaintiffs' Third Amended Complaint identifies the dates and locations of purchase of Perdue's Harvestland brand chicken. Plaintiffs further allege that they reasonably relied on Perdue's Harvestland chicken labels stating that the product was Humanely Raised and USDA Process Verified to their detriment in the amount of the difference in cost between Perdue's Harvestland brand chicken and the retail value of standard, mass produced chicken not marketed as Humanely Raised. For purposes of this motion, Plaintiffs have

sufficiently pled that the Defendant's claims constitute a material misrepresentation. Accordingly, as it relates to Count II of the Third Amended Complaint, Defendant's Motion to Dismiss is denied.

### C.    Count III: Negligent Misrepresentation

"Under New Jersey law, a claim for negligent misrepresentation requires a plaintiff to establish that defendant made an incorrect statement, upon which he or she justifiably relied, causing economic loss." *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 532 (D.N.J. 2011) (internal citations omitted). "[T]o prove a claim of negligent misrepresentation, a plaintiff must demonstrate that: 1) the defendant negligently provided false information; 2) the plaintiff was a reasonably foreseeable recipient of that information; 3) the plaintiff justifiably relied on the information; and 4) the false statements were a proximate cause of the plaintiff's damages." *McCall v. Metro. Life Ins. Co.*, 956 F. Supp. 1172, 1186 (D.N.J. 1996) (internal citation omitted).

For the reasons detailed above, and as applied to Plaintiffs' NJCFA and Fraud claims, Plaintiffs have pled sufficient facts for their negligent misrepresentation claim to withstand a motion to dismiss.

### D.    Count IV: Breach of Express Warranty

The elements of a breach of express warranty claim are as follows: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico*, 507 F.3d at 203 (citation omitted).

Plaintiffs have sufficiently alleged that the Humanely Raised label on Harvestland chicken products create an express warranty. (TAC ¶ 162.) As noted in Judge Wolfson's Opinion, an advertisement may create an express warranty. *Cipollone v. Liggett Grp., Inc.*, 893

16

F.2d 541, 575-76 (3d Cir. 1990), *rev'd in part on other grounds*, 505 U.S. 504 (1992). Once more, Plaintiffs' allegations in the Third Amended Complaint are responsive to Judge Wolfson's Opinion and Order that the claims be limited to Harvestland chicken products only.

Plaintiffs have sufficiently pled that a reasonable consumer may have interpreted the Humanely Raised label to include the processes to which the chicken is exposed throughout its life, including slaughter. Plaintiffs have fulfilled their obligations under the contract by paying the purchase price and have alleged damages derived therefrom. Specifically, Plaintiffs allege damage in the increased cost paid for Perdue's Harvestland brand chicken, as compared to the cost of the actual retail value of standard, mass produced chickens not labeled "Humanely Raised." Thus, Defendant's Motion to Dismiss Count IV is denied.

## V.     Conclusion

For the reasons set forth above, and for other good cause shown, Defendant's Motion to Dismiss Plaintiffs' Third Amended Complaint is DENIED. Plaintiffs' Motion for Leave to File a Supplemental Brief is DENIED. An order consistent with this Opinion will be filed.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: March 31, 2013