United States District Court
For the Northern District of California

1
2
3
4
5                    IN THE UNITED STATES DISTRICT COURT

6                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

7
8
9    ANIMAL LEGAL DEFENSE FUND,
     a non-profit corporation, and REGAL
10   VEGAN, INC.,                                      No. C 12-05809 WHA

11                 Plaintiffs,

12        v.                                           **ORDER GRANTING
                                                       IN PART AND DENYING
13   HVFG LLC, (d/b/a "Hudson Valley Foie              IN PART DEFENDANTS'
     Gras"), MARCUS HENLEY, MICHAEL                    MOTION TO DISMISS**
14   GINO, IZZY YANAY, and RICHARD
     BISHOP,
15
16                 Defendants.
                                        /
17

18                              **INTRODUCTION**

19        In this false-advertising action, plaintiffs assert that defendants' advertisements

20   misrepresent the nature of defendants' pâté.  For the following reasons, defendants' motion to

21   dismiss is **GRANTED IN PART** and **DENIED IN PART**.

22                               **STATEMENT**

23        Plaintiffs Animal Legal Defense Fund, a California nonprofit corporation, and Regal

24   Vegan, a New York corporation, allege that defendants Hudson Valley Foie Gras, LLC, a New

25   York corporation, and four of its officers (collectively "Hudson Valley") violated the federal

26   Lanham Act as well as California's unfair-competition and false-advertising laws by marketing

27   their foie gras as "the humane choice."  According to plaintiffs, this characterization

28   misrepresents the truth because defendants' foie gras is not produced humanely.

Foie gras is a delicacy, which can also be called pâté, produced from the livers of specially fattened ducks or geese (defendants raise ducks only).  Hudson Valley's foie gras sells for approximately $80 per pound (Compl. ¶¶ 1–3).  Plaintiffs describe defendants' foie gras production process as follows.  When Hudson Valley's ducklings are three months old, they are moved into special feeding barns.  There, they are restrained by the neck two or three times a day to be force-fed.  The force-feeding involves an "inflexible, unlubricated tube [that] is forcibly inserted into their esophagi" (*id.* ¶ 51).  A large volume of corn mash is pumped directly into the ducks' stomachs, and the amount increases slightly every day.  After about a month of force-feeding, the ducks are slaughtered.  Some of the ducks die from the force-feeding before they can be slaughtered (*id.* ¶¶ 49–57), although slaughter is timed to occur just before force-feeding typically becomes fatal (*id.* ¶ 107).

The complaint asserts the following aspects of force-feeding ducks render it cruel and inhumane.  Injuries and illness commonly result from the force-feeding itself, including ruptured esophagi, bone fractures, inhalation of food into the lungs, and bacterial infection (Compl. ¶ 61).  Then, because the ducks are forced to consume an unnaturally large quantity of food, their livers become greatly enlarged, resulting in hepatic lipidosis, which causes liver failure as well as seizures and nervous system impairment (*id.* ¶¶ 64–79).  Finally, the extremely swollen liver may lead to difficulty breathing, severe pain from the liver's capsule stretching, and broken legs as a result of the excess body weight (*id.* ¶¶ 80–105).  Because foie gras ducks are not given veterinary care, they may suffer with these injuries and diseases for up to four weeks until they die or are slaughtered (*id.* ¶ 63).

In 2004, California enacted a law that banned force-feeding birds for the purpose of producing an enlarged liver, as well as the sale in California of any products resulting from force-feeding.  Cal. Health & Safety Code § 25980, *et seq*.  It took effect in 2012.  The delay was designed to allow California foie gras producers to find a humane way, other than force-feeding, to produce the desired fatty livers, but because no producer was able to develop such a method, there are no longer any foie gras producers in California (Compl. ¶¶ 143–45).  Section 25980, however, does not prohibit out-of-state foie gras producers from marketing and shipping their

United States District Court

For the Northern District of California

products to California.  Hudson Valley, the largest foie gras producer in the United States, markets its foie gras as "the humane choice" on its web page, its Facebook and Twitter pages, and in its printed marketing materials (*id.* ¶¶ 12, 17–24).

Plaintiff Regal Vegan produces a non-meat, spreadable product called "Faux Gras." Because it is produced without animal byproducts, it is "undoubtedly humane" (Compl. ¶ 4). Regal Vegan sells Faux Gras in stores in Colorado and Washington, D.C., as well as online through its website.  Regal Vegan argues that its sales of Faux Gras are competitively harmed by Hudson Valley's claim that its foie gras is humane.  According to plaintiffs, Hudson Valley's foie gras is not humanely produced, and if consumers knew this, they would be more likely to buy Faux Gras (*id.* ¶¶ 4, 10).

Plaintiff ALDF is a national nonprofit organization whose "main focus is the use of the legal system to assist courts and legislatures in preventing animal cruelty and advancing the protection of the interests of animals through the legal system" (Compl. ¶ 11).  ALDF alleges it has spent considerable resources educating the citizenry about the cruelty inherent in foie gras production and requesting that the California Attorney General and the Better Business Bureau initiate false advertising actions against foie gras producers claiming their products are humane (*id.* ¶¶ 5, 116–18).

Plaintiffs allege Hudson Valley's marketing violates the Lanham Act, 15 U.S.C. 1125, *et seq.*; California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; and California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*  Hudson Valley moves to dismiss on three grounds:  (i) lack of Article III standing under Rule 12(b)(1); (ii) lack of Lanham Act standing under Rule 12(b)(6); and (iii) failure to state a Lanham Act claim.

**ANALYSIS**

**1.     REGAL VEGAN'S ARTICLE III STANDING.**

An independent analysis of Article III standing must occur prior to analysis of statutory standing.  *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011).

3

District courts must examine the following factors to determine whether plaintiffs have

constitutional standing:

> First, the plaintiff must have suffered an "injury in fact" — an
> invasion of a legally protected interest which is (a) concrete and
> particularized and (b) "actual or imminent, not 'conjectural' or
> 'hypothetical.'"   Second, there must be a causal connection
> between the injury and the conduct complained of — the injury has
> to be fairly traceable to the challenged action of the defendant, and
> not the result of the independent action of some third party not
> before the court.   Third, it must be "likely," as opposed to merely
> "speculative," that the injury will be redressed by a favorable
> decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal edits, quotations, and

citations omitted).   On a motion to dismiss, "general factual allegations of injury resulting

from the defendant's conduct may suffice."   *Id.* at 561.   When standing is challenged under

Rule 12(b)(1), the inquiry is therefore much like a Rule 12(b)(6) analysis, with the caveat that

"[w]here jurisdiction is intertwined with the merits, we must assume the truth of the allegations

in a complaint unless controverted by undisputed facts in the record"; unlike a Rule 12(b)(6)

analysis, it is appropriate to refer to extrinsic facts for the Rule 12(b)(1) analysis.   *Warren v. Fox

Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotations omitted).

Hudson Valley argues that neither plaintiff can satisfy any of the three *Lujan* requirements for

standing.

### A.     Injury in Fact.

To establish an injury in fact, plaintiffs must show that they have suffered "an invasion

of a legally protected interest which is (a) concrete and particularized, and (b) actual or

imminent, not conjectural or hypothetical."   *Carrico v. City and Cnty. of San Francisco*,

656 F.3d 1002, 1005 (9th Cir. 2011).

"In a false advertising suit, a plaintiff establishes Article III injury if some consumers

who bought the defendant's product under a mistaken belief fostered by the defendant would

have otherwise bought the plaintiff's product."   *TrafficSchool.com*, 653 F.3d at 825 (internal

quotations omitted).   To do so, plaintiffs may provide direct proof such as lost sales figures, or

may rely on "probable market behavior" by establishing a "chain of inferences showing how

defendant's false advertising could harm plaintiff's business."   *Ibid.*   Regal Vegan argues that

1   although it has not provided direct proof of lost sales, it has delineated a chain of inferences

2   showing how Hudson Valley's marketing could plausibly hurt its Faux Gras business.

3       In *TrafficSchool.com*, two online providers of driver's education courses sued the owners

4   of a website called DMV.org, which was not associated with the Department of Motor Vehicles.

5   DMV.org also provided online driver's ed courses. The plaintiffs could produce no lost sales

6   numbers, but the court considered a survey indicating that customers preferred driver training

7   courses that appeared to be recommended by the state's DMV. This was enough to create a

8   reasonable chain of inferences indicating that DMV.org could capture a larger portion of the

9   driver's ed market by misrepresenting itself. *Id.* at 825–26.

10       Similarly, here, Regal Vegan has presented surveys showing, among other things, that

11   animal welfare is important to customers in choosing which food to buy; that customers stop

12   buying foods they believe are produced in an unethical way; that customers will preferentially

13   choose otherwise-identical "humane" products over those that are not humane; that meat

14   substitutes like Regal Vegan's product have gained a significant market share; and that many

15   meat-eaters who have reduced their meat intake choose meat substitutes instead (Compl.

16   ¶¶ 123–30).

17       Regal Vegan also asserts that the facts show its product competes with foie gras.

18   Its product's name, Faux Gras, is a play on "foie gras." Its website describes its product as a

19   "pâté" (Tenenbaum Decl., Exhs. A, B, C). Regal Vegan states that it produces products that

20   were marketed as animal-product alternatives: For example, its website indicates that it

21   produces foods that are meant to substitute for animal-based favorites such as foie gras and

22   ricotta cheese (*see id.*, Exh. B). Faux Gras was specially formulated in order to "satisfy the same

23   craving some have for pâtés" (*ibid.*), and, presumably, to compete for consumers who might

24   otherwise crave, and buy, actual foie gras. Hudson Valley seems to detect a nefarious motive

25   behind the removal of the words "[n]ot meant to replace goose or duck liver" from plaintiff's

26   website (Br. at 11).

27       As described above, Regal Vegan has alleged facts showing that it did and does intend

28   its product to replace foie gras, despite words that it may have removed from its web page.

United States District Court

For the Northern District of California

1   Considering these facts as well as the survey data plaintiffs have described, this order finds that

2   Regal Vegan has alleged sufficient facts that it may be competing with Hudson Valley for the

3   same pool of potential customers:  those interested in purchasing humanely produced pâtés

4   (Opp. at 14).

5          **B.     Causation.**

6          To establish causation, plaintiffs must allege facts showing they suffered an injury "fairly

7   traceable to the challenged action of the defendants." *Lujan*, 504 U.S. at 561.  Hudson Valley

8   argues that plaintiffs have made only conclusory allegations that suffer from lack of any actual

9   facts to show the advertising has harmed either plaintiff.

10         Regal Vegan counters that it has been directly injured as a result of Hudson Valley's

11  activities.  It notes that California has essentially declared foie gras production as per se

12  inhumane, following from the fact that California banned as cruel the force-feeding of ducks and

13  geese, and there is no other commercially viable method to produce fatty livers.  Customers may

14  regard the intent behind the law and other sources of information indicating that foie gras

15  production is inhumane as inapplicable to Hudson Valley's foie gras, since it is labeled as

16  humane and thereby differentiated from all other foie gras.  Therefore, those customers inclined

17  to purchase only humanely produced foods who might otherwise have bought no foie gras at all

18  may be deceived into buying Hudson Valley's foie gras instead of choosing Regal Vegan's

19  alternative.  Regal Vegan also claims to have expended resources educating its targeted

20  consumer base in order to counteract Hudson Valley's alleged false claims (Compl. ¶ 10).

21         Here, causation follows from accepting that Regal Vegan and Hudson Valley may

22  produce a competing product.  In the market for humanely produced pâtés, a statement by one

23  competitor that its product is "humane," if in fact it were not, would plausibly disadvantage its

24  humane competitor.  Regal Vegan's allegation therefore satisfies the causation prong.

25         **C.     Redressability.**

26         To establish redressability, plaintiffs must allege clear and specific facts showing that

27  it is likely that the relief sought will remedy plaintiff's injury. *Lujan*, 504 U.S. at 560–61.

28  The plaintiff, however, "need not show that a favorable decision will relieve his every injury."

United States District Court

For the Northern District of California

1   *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007).  Plaintiffs here seek the remedy of an

2   injunction requiring Hudson Valley to remove the word "humane" from its advertising materials

3   and to "take corrective action to inform the public and . . . customers that their practices are not

4   humane" (Compl. at 27).  Hudson Valley argues that even if it removed the word "humane"

5   from its advertising materials, this would not redress Regal Vegan's purported injuries because

6   foie gras would still be available and would still impact the market for Faux Gras.

7       Regal Vegan acknowledges that even were an injunction to issue here, other sources

8   besides Hudson Valley might still claim foie gras production is humane.  Nevertheless, Regal

9   Vegan asserts it would be able to compete more fairly in the market for humanely produced

10  pâtés without Hudson Valley's claims that *its* foie gras is humane (*ibid.*).  This order agrees that

11  some of Regal Vegan's alleged injuries might be remedied by its requested relief, which suffices

12  to show redressability.  *See Massachusetts*, 549 U.S. at 517.  Regal Vegan therefore has Article

13  III standing to bring its claims.

14          **2.    ALDF'S ARTICLE III STANDING.**

15      Having determined that one plaintiff, Regal Vegan, has Article III standing, it is not

16  now necessary to consider whether ALDF has Article III standing in order to proceed with the

17  analysis.  *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993).  Defendants' motion to dismiss for

18  lack of Article III standing is therefore **DENIED**.

19          **3.    MOTION TO DISMISS PURSUANT TO RULE 12(b)(6).**

20              **A.    Legal Standard.**

21      On a motion to dismiss, a court evaluates a complaint for:

22          sufficient factual matter, accepted as true, to state a claim for relief
            that is plausible on its face.  A claim has facial plausibility when
23          the plaintiff pleads factual content that allows the court to draw the
            reasonable inference that the defendant is liable for the misconduct
24          alleged . . .  Although for the purposes of a motion to dismiss we
            must take all of the factual allegations in the complaint as true, we
25          are not bound to accept as true a legal conclusion couched as a
            factual allegation.
26
    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted).
27
28      Hudson Valley moves to dismiss on two grounds:  (i) that neither plaintiff has alleged

    a direct competitive injury sufficient to confer Lanham Act standing; and (ii) that plaintiffs have

failed to state a Lanham Act claim upon which relief may be granted because "the humane choice" is an expression of opinion, not fact.

### B.   Lanham Act Standing.

The "false advertising" prong of Section 43(a) of the Lanham Act provides, in relevant part:

> (1) Any person who, on or in connection with any goods . . . , uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> *          *          *
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> *          *          *
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

### (i)   ALDF.

Hudson Valley argues that ALDF cannot satisfy Lanham Act standing for one simple reason: it does not compete with Hudson Valley to sell anything. Therefore, ALDF does not "vie for the same dollars from the same consumer group." *TrafficSchool.com*, 653 F.3d at 826. ALDF, acknowledging the novelty of its legal theory, provides no authority for the proposition that an advocacy organization could be in competition with a business for Lanham Act purposes.

This order holds that ALDF does not have standing to pursue a Lanham Act false advertising claim. No court has held that Lanham Act competitors may be other than *business* competitors. A theoretical educational competition for the "hearts and minds" of consumers is insufficient to give ALDF Lanham Act standing. No re-pleading could cure this deficiency. Defendants' motion to dismiss ALDF's Lanham Act claim is therefore **GRANTED WITHOUT LEAVE TO AMEND**.

### (ii)   Regal Vegan.

"[F]or standing pursuant to the 'false advertising' prong, . . . a plaintiff must show: (1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury

United States District Court

For the Northern District of California

1    is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant." *Jack*

2    *Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir.

3    2005). If the plaintiff can show that it is a direct competitor, then a misrepresentation leads to a

4    presumption of "commercial injury," and Lanham Act standing is achieved. *TrafficSchool.com*,

5    653 F.3d at 827. Hudson Valley argues that Regal Vegan is not a *direct* competitor and

6    therefore cannot satisfy the "competitive injury" prong of the *Jack Russell* test. But proof of

7    direct competition only allows for a presumption of commercial injury; it is not a necessary

8    condition to satisfy the *Jack Russell* test.

9        Regal Vegan alleges that it and Hudson Valley "compete in the same industry, food

10   products, selling the same product, pâté, and vie for the same consumer dollars from the same

11   target audience, purchasers who care about the humane treatment of animals raised for food

12   production" (Opp. at 8). Regal Vegan cites *Kournikova v. General Media Communications*,

13   278 F. Supp. 2d 1111 (C.D. Cal. 2003), for the proposition that if they vie for the same

14   customers, competitors need not even be in the same industry. In *Kournikova*, the plaintiff was a

15   female athlete who brought a Lanham Act false advertising claim against a men's magazine for

16   printing nude photos falsely attributed to represent her. The court found she had standing to sue,

17   even though she was in the athletics industry and the magazine was in the publishing industry,

18   because both parties "compete[d] for the same dollars from the same target audience — namely

19   men." *Id.* at 1118. This was because the plaintiff was not merely an athletic symbol, but also

20   sold her image as a sex symbol, thereby entering the market within which the men's magazine

21   operated. The distinction between the parties' industries was therefore artificial. *Ibid.*

22       Hudson Valley counters with *Brosnan v. Tradeline Solutions, Inc.*, 681 F. Supp. 2d 1094

23   (N.D. Cal. 2010) (Magistrate Judge Joseph Spero). In *Brosnan*, the parties were in business in

24   the same industry, credit repair services. Because the defendant only provided one type of

25   credit-repair service, and the plaintiff did not provide that service, the court held they could not

26   be competitors under the Lanham Act. *Id.* at 1100. Hudson Valley asserts that Regal Vegan

27   cannot be in competition with it, since they provide very different types of products — at the

28   hearing, Hudson Valley asked why, if plaintiffs' argument were logically extended, would

United States District Court
For the Northern District of California

1   peanut-butter manufacturers not be in competition with foie gras producers, since they also

2   produce a humane spread (*see also* Reply at 5).

3          The difference lies in the manufacturers' marketing posture.  The Lanham Act targets

4   unfair behavior in the advertising marketplace.  *See generally Jack Russell*, 407 F.3d 1027.

5   The parties need not be direct competitors in order to supply Lanham Act standing; instead, if

6   their competition is more indirect, then they must also show "a commercial injury based upon

7   a misrepresentation about a product."  *Ibid.*  When one product is marketed to compete with

8   another product whose advertisements may mislead consumers, then the first product's maker

9   may be harmed.  Peanut butter is unlikely to be marketed as a foie gras alternative.  Faux Gras,

10  on the other hand, is plausibly an indirect competitor.  The market for which the parties compete

11  may be a more specific one than just "food products":  one more akin to plaintiffs' asserted

12  "spreadable pâtés for consumers interested in animal welfare" (Opp. at 9 n.1).

13         As the *Jack Russell* test also requires that the alleged commercial injury result from "a

14  misrepresentation about a product," then plaintiffs must show that "the humane choice" is a

15  misrepresentation.  Plaintiffs' complaint alleges that "the humane choice" is a misrepresentation

16  because defendants' ducks are raised inhumanely, and details are given from which a jury could

17  well find the treatment is inhumane (Compl. ¶ 3).  Accepting this allegation as true for the

18  purposes of this Rule 12(b)(6) motion, this order finds that plaintiff Regal Vegan has alleged

19  facts sufficient to provide Lanham Act standing.

20                    **C.      Lanham Act Requirement of Fact, Not Opinion.**

21         Hudson Valley argues that proving a Lanham Act false advertising claim requires that the

22  challenged slogan consist of "a specific and measurable claim, capable of being proved false or

23  of being reasonably interpreted as a statement of objective fact."  *Coastal Abstract Serv., Inc. v.*

24  *First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999).  Hudson Valley characterizes "the

25  humane choice" as a statement of opinion — mere puffery — one no consumer would interpret

26  as a statement of objective fact.

27         Plaintiffs, of course, feel differently.  They state that customers can, and do, rely on

28  words like "humane" in deciding what foods to buy — that "the humane choice" is a "specific

10

United States District Court

For the Northern District of California

1    and measurable claim" that may be "reasonably interpreted as a statement of objective fact."

2    *Ibid.* Plaintiffs allege that the context of the statement "the humane choice" within Hudson

3    Valley's advertisements gives the impression that Hudson Valley referred to independent

4    authority and research in determining that its process was humane (Compl. ¶¶ 22–25, 33–34).

5    This context, plaintiffs assert, was intended to bolster Hudson Valley's credibility with

6    consumers, and context should be considered when determining whether the slogan is mere

7    puffery. *See Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489 (5th Cir. 2000) ("better

8    pizza" more than puffery, taken in context).

9         Both the meaning and the import of the word "humane" are hard to pin down.  In the

10   absence of controlling legislation, related laws may be informative.  Congress has addressed the

11   definition of "humane" twice, both times in reference to the killing of animals.  In the Humane

12   Slaughter Act, Congress expressly defined "humane slaughter" for various livestock.  7 U.S.C.

13   1901, *et seq.*  In the Marine Mammal Protection Act, Congress expressly defined how a "taking"

14   may be done humanely.  16 U.S.C. 1362(4).

15        Notably, neither of these statutes addresses how an animal must be treated during its

16   life — they both deal with slaughter — and neither of these statutes covers poultry, including

17   ducks.  They do have in common, however, a theme of "pain"; that is, that the animals be killed

18   in such a way as to minimize the pain caused.  Although these statutes are not applicable here,

19   their guidance indicates:  (i) that in some contexts, including the treatment of food animals,

20   Congress has found that "humane" is susceptible of definition; and (ii) that a possible legal

21   definition of "humane" might reference treatment that does not cause undue pain to an animal.

22   A claim that its product is "the humane choice" might therefore constitute a statement that could

23   either be proved false or "reasonably interpreted as a statement of objective fact." *Coastal*

24   *Abstract*, 173 F.3d at 731.  At this stage in litigation, it suffices that a slogan indicating a

25   product is "humane" might therefore be subject to a false advertising claim.  Defendants' motion

26   to dismiss Regal Vegan's Lanham Act claim is **DENIED**.

27

28

**4.      CALIFORNIA UNFAIR COMPETITION AND FALSE ADVERTISING CLAIMS.**

Hudson Valley based its two motions to dismiss on Article III standing and the elements of the Lanham Act.  It expressly chose not to address plaintiffs' California Unfair Competition Law claims (Dkt. No. 40 at 15).  Consequently, this order declines to address these claims.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.  The answer is due by **APRIL 22, 2013**.


**IT IS SO ORDERED.**


Dated:  April 12, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE